GENTILE BROS. COMPANY, a corporation, v. FLORIDA IN-
DUSTRIAL COMMISSION, ERVIN THOMAS SPARK-
MAN, and T. H. HOBBS.

10 So. (2nd) 568                                    Division B
November 20, 1942       Rehearing Denied December, 17, 1942

Akerman, Dial & Akerman, for appellant.

Burnis T. Coleman, John P. Mack and S. Sherman Weiss, for appellees.

TERRELL, J.:

Appellant owns and operates a large citrus fruit packing house at Winter Park, Florida. The boxes for shipping its product are purchased "knocked down." It contracted with appellee, T. H. Hobbs, to assemble and load them on cars when packed. Hobbs employed and paid his own help and was responsible to appellant only as to results. Appellee, Ervin Thomas Sparkman, was employed by Hobbs and becoming unemployed, he applied for compensation under the Unemployment Compensation Act. His claim was denied by the Florida Industrial Commission for lack of earnings in employment. The appeals referee and the Board of Review found contrary to the Commission and their finding was affirmed by the circuit court. This appeal is from the latter decree.

The appellant contends that Hobbs was an independent contractor, that he was an employing unit under the Unemployment Compensation Act and was accordingly responsible for any amounts due Spark-

man under that Act. Appellee contends on the other hand that whether or not Hobbs was an independent contractor is not material, that Hobbs was in reality an employee of appellant and being so, the very terms of the Unemployment Compensation Act make it (appellant) liable for Sparkman's claim. Appellee also contends that the definition of "employment" as used in the Unemployment Compensation Act makes the claimant an employee of appellant and that he is not covered by any of the exemptions stated in Section 3-E-V of said Act.

The necessary result of appellee's contention if approved by this Court is to abrogate or ignore the relation of independent contractor when the question of unemployment compensation is involved. It is quite true that a great many courts in the country have disregarded all common law master and servant precepts in dealing with the question of unemployment compensation and have held such acts to be much broader and more inclusive in their scope. McDermott v. State, 196 Wash. 261, 82 Pac. (2nd) 568; In the matter of John Henry Foy, 10 Wash. (2nd) 317, 116 Pac. (2nd) 545; Young v. Bureau of Unemployment Compensation, 63 Ga. App. 130, 10 S.E. (2nd) 412; McKinley v. R. L. Payne and Son Lumber Company, 200 Ark. 1114, 143 S. W. (2nd) 38; In re Mid American Co., 31 Fed. Supp. 601. Other courts have held these statutes to be merely declaratory of the common law and that they do not abrogate common law concepts unless such a purpose is clearly expressed. Wisconsin Bridge and Iron Co. v. Ramsey, 233 Wis. 467, 290 N. W. 199; Washington Recorder Publishing Company v. Ernst. 199 Wash. 176, 91 Pac. (2nd) 718.

The words "employment," "employee," "wages," "remuneration," "employing unit," "agents," and others used in the statute, say appellee, are not used in a restricted sense but should be literally construed to cover or extend the beneficent purpose of the Unemployment Compensation Act. We are prepared to approve this contention; at the same time these terms cannot be extended to employing units not contemplated by the Legislature.

When the Legislature enacted the Unemployment Compensation Act, it was fully conscious of the master servant relation as it existed at the common law; that the distinction between principal contractor, independent contractor, and servant were well recognized by our law and the courts of this State. It was also conscious of the fact that the relation of master and independent contractor is a very common one, that hundreds of thousands of dollars are paid out annually on such contracts and that when they attain the status of an employing unit, they are required to register with and be recognized by the Industrial Commission.

An independent contractor has been defined as one who pursues an individual employment or occupation and represents his employer as to the results of his work but not as to the means by which the results are accomplished. Hobbs' contract met every element of this definition and the characteristic words of the Act, "employing unit," "employer," "employment," "wages," and others apply equally as appropriately to Hobbs as to appellant. The claimant was employed by Hobbs, was paid by him, was responsible to him and did not know appellant in the transaction.

In this situation whether Hobbs was or was not an independent contractor is not material. The claimant recognized him as an employing unit as contemplated by the Unemployment Compensation Act and we think he was warranted in doing so. He met every specification of that relation. He (claimant) was not listed as an employee of appellant and the record discloses that appellant had paid Hobbs all his contract required.

So the question here may be reduced to that of whether or not the Legislature in promulgating the Unemployment Compensation Act intended to abrogate for that purpose all master servant precepts as they existed at common law.

It is competent for the Legislature to do this if it so desires. In fact common law concepts that have become obsolete or tend to hamper the administration of justice should be abrogated but in the act under review, the Legislature expressed no purpose to do so. As heretofore pointed out, no employment relation is more generally approved in this State than that of independent contractor. So many contracts are predicated on that relation it would be hazardous to abrogate it abruptly and it should not be done when the record shows that Hobbs was an employing unit and all parties to this litigation treated him as such.

In the forepart of this opinion, we have adverted to the difference in scope given by the courts of this country to social security acts. After reading a great many of these opinions, we are impressed with the fact that this difference arises from the variance in the point of departure from which the acts took off. Some of the State Acts are older than the Federal Act

and by their terms accord a status to workers without reference to common law concepts affecting them.

The Florida Act was subsequent to the Federal Act, was designed to articulate with it and in many of its features was modeled after it. Regulation Ninety of the Treasury Department construing the Federal Act defined who were "employed individuals" and held their relationship to be "the legal relationship of employer and employee." It also held that the words "employ," "employer" and "employee" should be taken in their ordinary sense; it recognized the status of independent contractor to be that of the common law and that he was not an employee under the. Act. The Legislature of Florida was advised of this ruling in every case in which it has considered social security legislation but has never put a word in the law to indicate a departure from it. Under this state of facts, it would be presumptuous for the courts to apply a different rule.

In this holding, we do not lose sight of the benevolent purpose of the Unemployment Compensation Act but beneficence is not accomplished by the exercise of a "rob Peter to pay Paul" philosophy. Beneficence has to do with the one who pays as well as the one who is paid. It may be that such an interpretation will work a hardship in this case but individual cases should not be permitted to overthrow a long settled rule that the public has relied on and in a multitude of instances would be adversely affected by it if overthrown. Rules of law must be grounded on reason and justice rather than on what emotional impulse would dictate. It would be manifestly unfair to permit the claimant to enforce payment of his claim from a third party because the one who was in law

required to do so had failed him while the conduct of the third party was free from fault.

The judgment is reversed.

Reversed.

BROWN, C. J., CHAPMAN and THOMAS, JJ., concur.