THOMAS, Justice.
A very odd situation is reflected in this record.
Virgil Sanders Farm was engaged in growing tomatoes in the produce belt of Dade County. Usually tomatoes are harvested and shipped before becoming fully ripe but some of them for one reason or another reach the stage of ripeness that prevents their being acceptable in regular markets. In order to prevent or reduce the loss from such ripened fruit, Virgil Sanders Farm engaged Steinfeldt-Thomp-son' Company, by loose informal agreement,to buy the ripened fruit. According to the petitioners’ version of the facts developed by the testimony, it was part of the arrangement that Virgil Sanders Farm, if it wished, could interrupt the gathering o-f the fruit by Steinfeldt-Thompson Company and harvest the ripe tomatoes on its own account. Under what circumstances the petitioners claim this could have been done is not entirely clear.
Steinfeldt-Thompson Company contends that it was not obligated to take any particular quantity of tomatoes and if this company did not gather all tomatoes that ripened, Virgil Sanders Farm had the privilege of dealing with others for purchase of the residue.
Steinfeldt-Thompson Company was to pick the tomatoes only for its own processing or canning plant and for no one else and evidently this company had in its service “insufficient crews” to gather the tomatoes grown by Virgil Sanders Farm so it engaged Devon J. Law to pick the tomatoes and deliver them to the plant. Law employed men of his choice, discharged them as he pleased, fixed their hours of work, furnished baskets and buckets for *264 use of the pickers and trucks for transportation of the fruit from field to plant. He paid all the expenses of his operation and received from Steinfeldt-Thompson Company a certain sum for each boxful delivered to that concern. So his operation was apparently completely free of any supervision by Steinfeldt-Thompson Company, and it is because of this freedom of operation that petitioners insist that Law was an independent contractor only.
Jack Trotter was a member of Devon J. Law’s crew. He was paid daily for the amount of tomatoes he gathered and when he helped load the trucks he was paid a separate wage commensurate with the work performed.
The claimant, on 1 March 1953, while engaged as a member of the crew of Devon J. Law was injured, and it seems that at that time no one took the position that there was any relationship between Law and Steinfeldt-Thompson Company that would have made the company or its carrier responsible for compensation to the workman.
In any event, soon after the injury was suffered by the claimant, his employer, Law, reported the incident to Virgil Sanders Farm and Virgil Sanders Farm passed the information to its carrier, New Amsterdam Casualty Company. That carrier, apparently without taking pains to have the matter investigated, proceeded to pay compensation to the injured man and to furnish him medical care. Of course, the money was paid and the treatment provided solely on behalf of Virgil Sanders Farm.
Despite the factual situation we have described, Steinfeldt-Thompson Company in September 1955, more than two years after the injury, received notice that a claim for compensation benefits was being asserted against it by Jack Trotter, and the Deputy Commissioner eventually approved the claim. The company and its insurance carrier, Hardware Mutual Casualty Company, obtained a review and the full commission affirmed the deputy’s order. Upon a petition for certiorari we now pass upon the propriety of the proceeding.
The pertinent statute is Sec. 440.19(1), Florida Statutes 1951 and F.S.A. In the first part of this section it is provided that “right to compensation for disability * * shall be barred unless a claim therefor is filed within two years after the time of injury * * Since, say the petitioners, the claimant was injured 1 March 1953 and no claim was asserted against Steinfeldt-Thompson Company until 26 September 1955, it is clear that under that law the claim came too late. But, counters the claimant, the prohibition of this part of the section cannot avail the petitioners because under the exception expressed in it such a claim is not barred if “payment of compensation ha9 been made without an award” and the claim is filed within “two years after the date of the last payment.”
There immediately comes to us the question whether or not the payment by Virgil Sanders Farm, or its carrier, could assuming they were under no obligation to pay compensation, operate to extend the two-year period for filing claims on the theory that the “last payment” of compensation even by one paying the compensation through error would be the time from which a new period of two years would be computed.
We are not obliged to decide whether or not careless or erroneous payment by a stranger could logically be held to affect the responsibility or the defenses of one who might later appear to be liable because this question could in this case be based only upon the premise that Steinfeldt-Thompson Company was totally ignorant of the injury and the payments made by another. There was sufficient evidence to support a contrary viewpoint.
The petitioners, whose version of the facts we have so far related, strongly disclaim any responsibility of Steinfeldt-Thompson Company, or Hardware Mutual Casualty Company, for compensation or *265 medical treatment of the worker, Trotter. The impression we get from the briefs of petitioners is that Steinfeldt-Thompson Company and Virgil Sanders Farm were wholly dissociated from Devon J. Law who, as an utterly independent contractor, had employed Trotter and was, therefore, solely accountable to the employee for the injuries.
The premise assumed by the petitioners does not coincide with the findings of the deputy commissioner which the full commission affirmed. The deputy found that the employee was injured by accident arising out of and in the course of his employment with Steinfeldt-Thompson Company, as well as Devon J. Law, although compensation had been paid and medical benefits had been furnished by the insurance carrier for Virgil Sanders Farm, New Amsterdam Casualty Company, from the day of the injury, 1 March 1953, to 24 February 1955 when maximum recovery was supposed to have been reached. The workman filed a claim for additional compensation and on 13 September 1955 a hearing was held to determine the date of maximum recovery, the degree of residual permanent disability and the right to any other benefits. Then it was for the first time determined that Virgil Sanders Farm was not claimant’s employer.
Contrary to the assertion of the petitioners that there was no particular obligation on the part of Steinfeldt-Thompson Company to harvest all the ripe tomatoes but only to take such as the company needed, the deputy determined that there was a primary duty on the part of this company to pick the ripe tomatoes to prevent spoilage in the field. Fie found also that this company “subcontracted [the] primary obligation * * * to Devon J. Law, who in turn hired Jack Trotter * * Upon this finding of fact he based the conclusion that Steinfeldt-Thompson Company was the common employer while Devon J. Law was a subcontractor so that the provisions of Sec. 440.10(1), Florida Statutes 1951, and F.S.A., should be brought into play in behalf of the injured workman.
In the pertinent part of the statute it is provided that if “a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for and shall secure the payment of compensation to all such employees, except to employees of a subcontractor .who has secured such payment.”
In fine, the pivotal point is the nature of the undertaking by Steinfeldt-Thompson Company. If that company had no “primary obligation” to pick ripe tomatoes in quantity beyond its needs, there was, according to petitioners’ contention, no responsibility for the injury suffered by the workman. If, on the other hand, there was such a “primary obligation” to pick a quantity of ripe tomatoes beyond the company’s needs, as the deputy found, then the company was answerable to the employee because part of the work had been “sublet” bringing the protection of the law to the employee. There was substantial competent evidence that the latter situation obtained so we approve the findings of the deputy and the full commission on this point.
The claimant contends that two factors support the order which he was eventually awarded. Not only had the vice-president of Steinfeldt-Thompson Company been told of the injury but the company’s subcontractor had, though mistakenly, notified Virgil Sanders Farm putting in motion payments by Virgil Sanders Farm’s insurance carrier. By the combined action of the two, the claimant contends, he was led to believe he was secured benefits under Workmen’s Compensation Law until the period of two years from the date of injury had elapsed then was faced with the defense that the company actually responsible to him should *266 be spared mating payments because of the operation of the statute while the company from whom payments had 'been received would not be required to pay more because it had not been liable in the first place.
The claimant insists that the factual situation clearly calls for application of the doctrine of estoppel and we are inclined to agree with him. There was sufficient evidence to justify the view that Law was Steinfeldt-Thompson Company’s subcontractor and that both had been notified of the injury. The defense of the statute of limitations was one which could be waived and Steinfeldt-Thompson Company could logically be said to have waived it when it suffered the payments to be made and treatment to be afforded by Virgil Sanders Farm’s insurance carrier knowing from the report of the subcontractor that the workman had been injured. Sec. 440.20(4), Florida Statutes 1951, and F.S.A. It could hardly have been expected of the employee to proceed against Steinfeldt-Thompson Company when he was being compensated and treated at the behest of his employer, and his right to benefits had not been contested either by Law or Steinfeldt-Thomp-son Company.
One more question deserves consideration, discussion and decision. If Trotter was an agricultural farm laborer, he was not entitled to the benefits of Workmen’s Compensation Law unless his employer had waived the exemption. The petitioners challenge the finding of the deputy, which was approved by the full commission, that Trotter was not an agricultural farm laborer. Evidently this conclusion sprang from the theory that inasmuch as the workman’s employer was not engaged in farming but only in gathering fruit for a cannery and loading trucks for transportation to the plant, the status of the workman was fixed by the business of his employer and he was not precluded from the benefits of the act. This position seems to have support in Sec. 440.10(1), supra, because of its provision that “[i]n case a contractor sublets any part * * * of his * * * work to a subcontractor * * *, all of the employees of such contractor and subcontractor * * * engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for and shall secure the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.” (Italics supplied.)
’ Obviously, Steinfeldt-Thompson Company was not engaged in an agricultural pursuit, but in the business of processing and canning, so once it was decided that that company had “sublet” to Trotter’s employer, Trotter was properly classified as a workman in the cannery and processing enterprise.
The petition is denied.
TERRELL, C. J., and ROBERTS and THORNAL, JJ., concur.