101 So.2d 422 (1958)
Chester B. LINDSEY, Dba Gulf Timber Company, Petitioner,
v.
Henry WILLIS, Homer Presley, Hollis Presley, Presley Timber Company, Buckeye Cellulose Corporation, and the Florida Industrial Commission, Respondents.
No. A-39.
District Court of Appeal of Florida. First District.
February 25, 1958.
*424 Robert M. Ervin, Tallahassee, for petitioner.
Donald O. Hartwell, Tallahassee, F.B. McGill, Opp, D. Allan Norris, J. Lewis Hall, Tallahassee, Byron Butler, Perry, Burnis T. Coleman, Tallahassee, for respondents.
WIGGINTON, Judge.
This case, which is not without its difficulties, is before us on petition for writ of certiorari to review a compensation order of the Florida Industrial Commission. The essential facts upon which it is grounded are as follows:
The Buckeye Cellulose Corporation, hereinafter called Buckeye, consumes large quantities of pulpwood but has no means of obtaining this, its primary raw material. Although it owns or controls certain timber lands, it is without the necessary facilities to harvest same, and therefore relies to a large extent upon certain so-called brokers who own, control or have access to large supplies of standing timber to furnish the pulpwood necessary to its operation. Chester B. Lindsey, the petitioner herein, is such a broker who owned certain pulpwood timber, and will hereinafter be referred to as Lindsey.
Buckeye entered upon a loose informal agreement with Lindsey whereby the latter would furnish a portion of Buckeye's pulpwood needs according to weekly quotas set by Buckeye. Lindsey was under no obligation to furnish all or any part of the quota, nor was he prevented from supplying companies within the industry other than Buckeye; but Buckeye had agreed to accept at least the amount designated by it each week, if offered by Lindsey at certain designated delivery points and in accordance with standard industry requirements as to measurements and type of wood. The sources of supply and methods of procurement were left entirely with Lindsey.
Being without the necessary facilities to harvest his supply of timber and effect delivery thereof, Lindsey engaged the services of certain so-called producers for this purpose. These producers in turn employed a sufficient number of workers to cut and deliver pulpwood as directed. Lindsey gave the necessary instructions as to which of his timber was to be cut and designated the delivery point. All such instructions were given in conformity with the Lindsey-Buckeye agreement. Lindsey reserved the right to terminate the services of any producer, and his crew, at will.
One Presley was a producer operating under the foregoing agreement with Lindsey. All the necessary equipment was furnished by one Norris who generally operated as a producer under Presley, but who, in the instant case, occupied the position of a subproducer under Presley. The claimant, Willis, was a member of the Norris crew, and was so engaged at the time of his injury.
In summary: Buckeye would notify Lindsey of the amount of pulpwood it was willing to purchase in a given week. Lindsey would then instruct Presley as to the maximum amount of timber he could cut and deliver, the former designating the location and timber to be cut and the point at which it was to be delivered. Presley relayed these instructions to Norris and the men in the woods, whose job it was to carry them out.
We are here called upon to determine whether the Deputy Commissioner, or the Full Commission, properly determined the question of "Who was claimant's employer?"
This question necessarily involved a determination of the relationships between the various parties to the transaction for the fulfilment of which claimant was employed. For the purpose of clarity these *425 will be considered in the order in which they devolve from Buckeye.
The deputy concluded the relationship between Buckeye and Lindsey to be one of agency. The Full Commission, on the other hand, determined this relationship to be contractual. We are of the opinion that the modus operandi between these parties, as reflected in the foregoing statement of facts, clearly negatives either conclusion as a matter of law. The burden of proving an agency rests upon the claimant as the asserting party.[1] This question is to be determined by the fact that one represents and is acting for another, and not by the consideration that it will be inconvenient or unjust to hold otherwise.[2] There is a complete absence of any competent evidence to establish the existence of an obligation or duty owed by either party to the other. Likewise, there is ample evidence to preclude a finding other than that there was no binding and enforcible agreement between them. Clearly, neither party could have required performance by the other. Those essential elements of a contract, to-wit: mutuality of performance and remedy, are lacking in the Buckeye-Lindsey relationship. Their agreement amounted to nothing more than an offer by Buckeye to buy up to a stated amount of pulpwood delivered at designated points, if made available by Lindsey. It is apparent therefore that Lindsey occupied the position of a vendor, a relationship not within the purview of the Florida Workmen's Compensation Act. It follows that both the Deputy and the Full Commission applied incorrect principles of law to the facts in evidence as they relate to the Buckeye-Lindsey relationship.
Turning now to the relationship between Lindsey and those under him, it is necessary to determine only Lindsey's position as regards Presley. The relationship existing between Presley and Norris is so closely analogous to that between Lindsey and Presley that we see no need to set forth our conclusions as to each separately. We are of the opinion that Norris' position as to Presley is, in law, the same as Presley's position with respect to Lindsey. Further, if Presley was in fact Lindsey's employee, and his employment contemplated the help of others, such help would also be employees of Lindsey within the provisions of the Workmen's Compensation Act.[3] By its very nature, Presley's agreement with Lindsey necessarily contemplated that he engage the services of others to aid in his performance.
The effect of the deputy's findings in this regard is that Presley was an employee. The order of the Full Commission was predicated upon its determination that Presley was in law and in fact a subcontractor under Lindsey within the meaning of Sec. 440.10(1). Our prior holding herein  that Lindsey was not a contractor with Buckeye  precludes a finding that Presley was a subcontractor under Sec. 440.10(1) since the latter necessarily presupposes a prime contract in the common enterprise.[4] It follows that Presley was either an independent contractor and therefore excluded under Sec. 440.02(2) (c) 1 of the Act, or an employee under Lindsey. The question therefore concerns the sufficiency of the evidence to support the deputy's finding that the latter relationship existed.[5]
Our Supreme Court has held, on various occasions,[6] that the test as to what *426 constitutes independent service lies in the control exercised, the decisive question being concerned with who has the right to direct what shall be done and when, where and how it shall be done. Other facts commonly recognized in determining such a relationship are the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price, the independent nature of alleged independent's business or his distinct calling, his employment of assistants with the right to supervise their activities, his obligation to furnish necessary tools, supplies and materials, his right to control the progress of the work except as to final results, the time for which the workman is employed, the method of payment, whether by time or by job, and whether the work is part of the regular business of the employer. While the foregoing factors are well recognized and fairly typical indicia of the status of an independent contractor, the presence of one or more of such indicia in a given case is not necessarily conclusive.[7]
An application of the accepted test to the circumstances of the instant case clearly reveals the absence of various indicia of an independent relationship. There is no binding contract under which either party could enforce performance. Presley had no exclusive right to control the progress of the work to be performed, since Lindsey necessarily had to instruct him as to the location, size, amount and destination of any and all cuttings. No specified length of employment was set, but the relationship was such that Presley's services continued only so long as Lindsey desired. Conversely, Presley's only motive for performing his agreement with Lindsey was one of self-interest. He would incur no legal liability for failure to fill the weekly quota set either by Buckeye or Lindsey. Payment for services rendered was made not on a job basis, but rather on a piecework basis and in accordance with production. There can be no doubt that the services rendered by Presley and those working under his command constituted not only a part, but virtually all of Lindsey's regular business.
Still, the ultimate test lies in the element of control.[8] Without doubt, Lindsey had the unrestricted power to terminate Presley's services at will, and with or without cause. Such power "* * * is indisputedly an evidential element which tends strongly to show that the person employed is not an independent contractor."[9] Larson states[10]: "The power to fire is the power to control." This, on the theory that such a power is inconsistent with the concept of independent contractor, under which the contractor has the legal right to complete the project contracted for and to treat any attempt to prevent completion as a breach of contract.[11] Our Supreme Court has recognized the force of such reasoning: In Magarian v. Southern Fruit Distributors,[12] the individual in question was engaged to perform services as a citrus-fruit buyer for the alleged employer. The court's decision holding him to be an employee was founded at least in part upon the fact that the "* * * terms of employment were such that either party could have terminated * * * without cause * * * without liability to the other by reason of so doing." [146 Fla. 773, 1 So.2d 859.]
While there are elements in the instant case that closely resemble those present in Peterson v. Highland Crate *427 Co-op,[13] relied upon by petitioner, there are equally significant differences. In the latter case there was found to exist an unimpeachable contract which was subject to termination only for cause, or upon completion. Furthermore, the question of whether a given individual is an independent contractor is generally one of ultimate fact, involving a conclusion to be derived from a consideration of all the evidence.[14] "It should be noted, however, that the importance of formal tests in this field should not be overemphasized, because of the danger of giving legal sanctions to an effort on the part of an employer to avoid the provisions of the Act by creating the appearance of employing only independent contractors when for all practical purposes a master-servant relationship actually exists."[15]
In the instant case the deputy was the trier of fact and as such, it was entirely proper for him to reconcile conflicts in the testimony adduced before him and to draw reasonable inference therefrom.[16] His findings of fact should be upheld unless there is no substantial evidence, which accords with logic and reason, to sustain them.[17] While our conclusions as to the ultimate facts herein, had we been the trier of such facts, may not have coincided with those reached by the deputy, we cannot say, in the face of such as have been hereinbefore recited, that there is no competent substantial evidence upon which to base his findings and conclusions. It follows, therefore, that the deputy's determination, to the extent that it holds Lindsey to be claimant's employer and liable for his injuries, must be upheld.
Having so held, it becomes unnecessary to discuss petitioner's contentions concerning the constitutionality of F.S. Sec. 440.10 (1), F.S.A., as applied by the Full Commission. We wish to point out, however, that had the facts supported the existence of a contract between Buckeye and Lindsey, and had Presley and/or Norris been found to occupy the position of sub-contractors, then Lindsey would be properly accountable as claimant's statutory employer. This is so for the reason that Lindsey would then be the prime contractor or common employer with the primary obligation to Buckeye; and employees of those to whom Lindsey "sublet" would fall within the class contemplated by F.S. Sec. 440.10(1), F.S.A.[18]
Accordingly, it is the order of this Court that the writ issue and the order of the Full Commission be quashed. The cause is remanded for the entry of an order re-instating and modifying the order of the Deputy Commissioner to the extent necessary to render it in accordance with the views herein expressed.
It is so ordered.
STURGIS, C.J., and O'CONNELL, STEPHEN, C., A.J., concur.
NOTES
[1] See Chase & Co. v. Miller, 81 Fla. 472, 88 So. 312.
[2] 2 Am.Jur., Agency, Sec. 24, p. 27.
[3] Sears Roebuck & Co. v. Pixler, 140 Fla. 677, 192 So. 617; Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608.
[4] Jones v. Florida Power Corp., Fla. 1954, 72 So.2d 285.
[5] United States Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741.
[6] Magarian v. Sou. Fruit Dist., 146 Fla. 773, 1 So.2d 858; Sears Roebuck & Co. v. Pixler, supra note 3; Gentile Bros. Co. v. Florida Industrial Commission, 151 Fla. 857, 10 So.2d 568; Baya's Bar & Grill v. Alcorn, Fla. 1949, 40 So.2d 468.
[7] Magarian v. Sou. Fruit Dist., supra, note 6.
[8] Supra, Note 5.
[9] 27 Am.Jur., Independent Contractor, Sec. 21.
[10] Larson: Law of Workmen's Compensation, Sec. 44.35.
[11] See Deason v. Coal Operators Casualty Co., La. App., 43 So.2d 630.
[12] Supra, Note 6.
[13] 156 Fla. 539, 23 So.2d 716.
[14] See Lawrence v. Industrial Commission, 391 Ill. 80, 62 N.E.2d 686.
[15] Hicks v. Kemp, Fla. 1955, 79 So.2d 696, 699.
[16] Hi-Acres, Inc., v. Pierce, Fla. 1954, 73 So.2d 49.
[17] United States Casualty Co. v. Maryland Casualty Co., Fla., supra, Note 5.
[18] Steinfeldt-Thompson Co. v. Trotter, Fla. 1957, 95 So.2d 262; Jones v. Florida Power Corp., supra, Note 4.