STURGIS, Judge.
We consider two petitions for certiorari to review an order of the Florida Industrial Commission relating to accident benefits under the Workmen’s Compensation Law, F.S.A. § 440.01 et seq. The facts are identical and the petitions have been consolidated for the purposes of this review.
One petition is filed by employees and their successors in interest, hereinafter called the “claimants”, who challenge the Deputy Commissioner’s holding that one Worth Hull, hereinafter called the “producer”, was the sole employer, and also challenge the Full Commission’s reversal of the deputy and substitution of W. W. Land, hereinafter called the “broker”, as the sole employer. It is their contention that St. Marys Kraft Corporation, hereinafter called the “pulp mill”, as well as the producer and broker, is at least a joint employer and liable for compensation payments.
The other petition is by the broker, Land, who challenges the Full Commission’s action holding him to be the sole employer. The producer, Hull, is not a party to this review.
The truck in which the compensable employees were riding overturned and caught *177 fire while they were en route to the woods to cut pulpwood. Claims were originally filed against the producer, Hull. After hearings on that premise they were amended to include the pulp mill, St. Marys Kraft Corporation, as an additional employer. Hearings de novo were held on that premise, whereupon the claims were again amended to include the broker, W. W. Land, as an additional employer. Hearings de novo were held on that premise, whereupon the Deputy Commissioner entered the order holding that the producer, Hull was the sole employer. In reversing the Deputy Commissioner and holding the broker, Land, to be the sole employer, the Full Commission relied on Lindsey v. Willis, Fla.App., 101 So.2d 422, recently decided by this court.
The evidence reflects the following mode of operation: The respondent pulp mill would give broker Land a weekly “quota” indicating the quantity of pulpwood it would purchase from him at a stated price upon delivery at the mill during the subject week. The so-called quota was nothing more than an offer to purchase and liability of the pulp mill to pay Land became fixed only upon delivery of acceptable pulpwood within the period specified. Land was under no obligation, however, to sell or ship any pulpwood whatever to that pulp mill at any price.
The producer, Hull, acquired the standing timber by a separate and independent transaction, exclusively employed the claimant lumberjacks, paid them their wages, and exercised complete and independent control over their work. Land arranged to purchase a certain quantity of pulpwood from Hull f. o. b. railroad cars. The timber-cutting rights on the land from which claimants were to cut did not belong to Land or the pulp mill. On the day of the accident Land, at Hull’s request, informed Hull’s crew where and to whom Hull wished them to report for work.
The truck involved in the accident was originally purchased by Land from the pulp mill, which retained title to secure payment of the purchase price payable in installments. The retain title contract required the truck to be used exclusively in the timber business, but not in connection with the business of any particular concern. Thereafter Land sold the truck to Hull subject to the retain title contract, and at the time of the accident Hull owed a balance thereon. It was customary for Land to deduct these purchase installments on the truck from his payments to Hull for pulpwood and to in turn remit to the pulp mill the payments under the contract.
It appears to be a common practice of the industry for pulp mills to advance money or credit to pulpwood producers to enable them to acquire timber rights which are in turn assigned to the pulp mill as security for repayment, and for the brokers to deduct from their payments to producers funds to be remitted to the pulp mill for application on such advances. Such practice does not in itself establish the relationship of employer and employee between the lender and persons employed exclusively by the borrower.
Claimants primarily insist that these transactions show that the pulp mill involved in this case is the real employer and that the record reflects no more than a devious contractual arrangement by which it seeks to avoid its legal liability. Putnam Lumber Co. v. Berry, 146 Fla. 595, 2 So. 2d 133, is cited for the general proposition that courts will penetrate the veil of fictitious arrangements to reach the party legally responsible. While the legal principle is sound, it does not apply under the facts to the case on review. That case went no further than to hold that the duty of an employer to provide its employees with safe working conditions cannot be delegated to another and that the lumber company was properly joined as a party defendant with those to whom it had undertaken to delegate such responsibility.
Lindsey v. Willis, supra, relied on by the Full Commission in holding the broker, *178 Land, to be the sole employer, is clearly distinguishable on the facts from the case on review. In the Lindsey case the so-called “broker” personally owned the subject timber and being without the necessary facilities to harvest and deliver it engaged the services of so-called “producers” for that purpose; and while Lindsey’s “producers” employed the workers to cut and deliver the pulpwood, it was he who controlled the operation by giving the instructions as to what part of his timber was to be cut, designating the delivery point, and reserving the right to terminate the services of any “producer” and his crew at will. We held that under that arrangement there was no independent contractual relationship between Lindsey and the producers. Wigginton, J., speaking for the court, said:
“Without doubt, Lindsey had the unrestricted power to terminate Presley’s services at will, and with or without cause. Such power ‘ * * * is indisputably an evidential element which tends strongly to show that the person employed is not an independent contractor.’ ” (Citing 27 Am.Jur., Independent Contractor, Sec. 21.) [101 So. 2d 426.]
In the instant case the broker, Land, had no control or direction over the operation of the producer, Hull, or over his employees, nor did he own the standing timber. It is apparent, therefore, that Hull was an independent contractor and that the facts on which the Lindsey case turned are not present in this case.
We agree with the conclusions of the Deputy Commissioner and of the Full Com-ipission that the respondent pulp mill was not the employer of the claimants. Myriad excursions are made by business enterprises outside their main fields of endeavor in pursuit of the many intangibles that combine to make up a healthy business operation. Into the category of good will may well fall the type of advance made to Land, as well as Land’s assignment to Hull. The ramifications of extending liability for compensation under the Workmen’s Compensation Law to include such business practices would be extremely complicated and so far-reaching in effect that the wisdom of such is highly debatable. In any event, it is for the legislative rather than the judicial branch of government to establish that liability, if ever.
The evidence is ample to support the Deputy Commissioner’s findings of fact and they must be sustained upon the authority of United States Casualty Co. v. Maryland Casualty Co., Fla., 55 So.2d 741. Upon those findings he correctly applied the law in holding that the producer, Hull, was the sole employer.
Certiorari is granted. The order of the Full Commission is quashed and the order of the Deputy Commissioner is reinstated.
WIGGINTON, C. J., and CARROLL, DONALD K., J., concur.