DREW, Justice.
Petitioner, Thomas L. Cook, seeks review of an order of the full commission modifying an order of the deputy commissioner. The modification set a limitation on monthly payments to the admitted permanent total disability claimant for reimbursement of medical care and nursing charges. The full commission also vacated and remanded for further consideration that portion of the award of the deputy allowing claimant’s attorney’s fees.
The question of the award of attorney’s fees is readily disposed of. At the oral argument here the respondents’ attorney stipulated that the amount of the award was reasonable and consented that it be affirmed. Moreover, our conclusion that the modification award of the full commission must be quashed removes the basis of the order and requires its reinstatement.
The questioned order of the full commission determines that the findings of the deputy commissioner[1] are supported by *839 substantial, competent evidence, which accords with logic and reason, and that the compensation order accords with the essential requirements of law except for two items, i. e. the amount awarded for reimbursement of monies expended for medical care, nursing services and appliances, and the amount of the fee for claimant’s attorney. The latter item is disposed of in the preceding paragraph. The order of the deputy on the former reads as follows:
“(3) Furnish to claimant such medical care and nursing services and appliances in his home as the nature of his condition and care requires, even though the same exceeds the cost of his care in a private nursing home.”
The full commission modified the above portion of the deputy’s order as follows:
“(3) Furnish to claimant such medical care, nursing services and appliances, as the nature of his injury or the process of recovery may require, and pay to claimant the sum of $375 per month as reimbursement for nursing care and attendance.”
With no dispute as to facts our task is to determine whether the full commission properly fulfilled its function with reference to the evidence supporting the findings and the law applied to the findings.[2]
It now becomes our task to determine if the full commission upon review was charged with the duty and responsibility of making separate findings of fact as we think it did here.[3] Prior to 1941, the full commission was charged with the duty and responsibility of making findings of fact and of entering its compensation order. While this responsibility existed then, our interest in such activities on the part of the full commission now is purely historical. This is so because under the present law the deputy commissioner is the only person possessing that power. Once having made such findings and having entered a compensation order, the full commission should adhere to such findings of fact unless there is no competent sub *840 stantial evidence to sustain them.[4] If it is made to appear the findings of fact are not sustained by competent, substantial evidence, the full commission in its quasi-judicial appellate capacity may affirm, reverse or modify said compensation order, or remand the claim for further proceedings before a deputy commissioner, who shall proceed as the full commission may direct.[5]
In this case, the full commission, in determining the cost of nursing care and attendance in the claimant’s home was $652.17 a month, made a finding of fact incapable of being made by the deputy after hearing the witnesses. This is so because of the fluctuation of costs for those services dependent upon the condition of the claimant from time to time. Furthermore, the full commission failed to indicate whether this was to be an average figure per month figured over the total number of days of home attendance or exactly what method of computation the full commission relied upon in arriving at this amount. Moreover, in our examination of the record, we can find nothing to indicate the source of the figures arrived at by the full commission.
The deputy, as we have said many times, is in a better position than the reviewing body to judge the ultimate value of such testimony both expert and lay of the witnesses who appear before him, and how much weight should be given their testimony.[6] This is not a question of the failure of the deputy commissioner to have made the proper findings of fact as the full commission determined the findings to have been proper in every respect except the amount to be paid for reimbursement for care and for attorney’s fees. It holds the individual figures to be accurate and correct, but questions the total amount to be expended. Based on its own calculations, it then makes a finding of fact on the total monthly amount being expended, and concludes on the premise the amount is excessive, and that there is competent, substantial evidence claimant could receive full time care for a figure of one-half that being expended.
We find no basis for the conclusion of the full commission that claimant could be adequately cared for in a nursing home for a total of $375.00 per month and such was contrary to the conclusion of the deputy. The deputy stated,
“Mr. E. H. Schanitzler, owner of the Sun Ridge Manor Nursing Home, a converted motel, located at 1701 North Federal Highway, Fort Lauderdale, testified that Mr. Cook was in his nursing home for a twenty-four hour period and from what he knows of the claimant’s care during that time, he would provide all of his needs for $300.00 monthly plus medication, on a trial basis.” (Emphasis supplied.)
In sum, the full commission, while it has the statutory obligation to affirm, reverse, modify or remand, must do so, so far as factual matters are concerned, on the basis of the findings of facts of the deputy and not on separate or substituted findings of its own.[7] This, then, brings us to the *841 proposition of whether the deputy commissioner properly reconciled whatever conflicts existed in the testimony adduced before him and whether he drew reasonable inferences therefrom. We must accept the premise that his findings of fact — the only proper findings of fact since we have held the findings of the full commission were without authority — should be upheld unless there is no substantial evidence, which accords with logic and reason, to sustain them.[8]
The test here as in all cases where the evidence is competent and substantial and which accords with logic and reason is whether the result or finding is et sequi-ter therefrom. As we stated in the Andrews v. C. B. S. Division, etc. case,[9]
« * * * >p0 pU£ j(- another way, if the evidence is not logical and reasonable, a finding based on and supported by such evidence would be based on incompetent evidence and hence be contrary to law.”
We are concerned with the result arising from the findings of fact of the deputy commissioner. That result is expressed in the order, specifically that portion thereof requiring the carrier to furnish the claimant such medical care and nursing services and appliances in his home as the nature of his condition and care requires, even though the same exceeds the cost of his care in a private nursing home.
The statutory authority upon which the deputy commissioner arrived at his conclusion evolves from Section 440.13(1) :
“(1) The employer shall furnish to the employee such remedial treatment, care, and attendance under the direction and supervision of a qualified physician or surgeon, or other recognized practitioner, nurse or hospital, and for such period, as the nature of the injury or the process of recovery may require, including medicines, crutches, artificial members, and other apparatus. If the employer fails to provide the same after request by the injured employee, such injured employee may do so at the expense of the employer, the reasonableness and the necessity to be approved by the Commission. The employee shall not be entitled to recover any amount expended by him for such treatment or service unless he shall have requested the employer to furnish the same and the employer shall have failed, refused or neglected to do so, or unless the nature of the injury required such treatment, nursing and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide the same; nor shall any claim for medical, surgical or other remedial treatment be valid and enforceable unless within ten days following the first treatment (except in cases where first aid only is rendered) and thereafter at such intervals as the commission by regulation may prescribe the physician or other recognized practitioner giving such treatment or treatments furnish to thé commission and to the employer a report of such injury and treatment on forms prescribed by the commission, provided that the commission for good cause may excuse the failure of the physician or other recognized practitioner to furnish any report within the period prescribed and may order the payment to him of such remuneration for treatment or service rendered as *842 the commission finds equitable. The physician shall also furnish to the injured employee, on demand, a copy of each such report.”
It is immediately apparent that there is no monetary, limitation either literally or by implication. The standards which the statute prescribed are (1) the nature of the injury and (2) the process of recovery.
While the statute allows the commission to approve the reasonableness and necessity of the charges if the employer fails to provide same after request, we are not faced with such a proposition in the instant case. The full commission finds that to compel the carrier to pay more than the cost of caring for this claimant in a nursing home is unreasonable. It does not hold the claimant is prohibited from care at home, or that the cost of caring for him at home is unreasonable. It holds only that he should limit his expenditures to $375.00 per month for reimbursement of nursing care and attendance. Parenthetically in reviewing the record we must say that we do not approve the highly unorthodox and patently irregular methods on the part of the carrier in removing the claimant without his permission and consent from the hospital where he was being treated to a rest home, the location of which was unknown to him. All of this was established by the admitted testimony of the carrier’s attorney who was concerned with the high cost of care of this patient even while he was in the hospital.[10]
The peculiar facts and circumstances of the instant case were before the deputy commissioner. The findings of fact and the results as reflected in the order properly followed the dictates of the statute which is in no wise delimited by specific amounts. We have held in a case where a claimant lost control of his left arm, the strength of his left leg as well as the partial control of his urinary organs (which is not unlike the instant case where the claimant, a hemiplegic, is incontinent oí urine and bowel with no use of his legs or the left side of his body) that an order of a deputy commissioner to send the claimant to the Mayo Clinic for treatment by a team of specialists was not an abuse of discretion on the part of the deputy commissioner.[11]
 This Court has consistently construed the Workmen’s Compensation law liberally in order to accomplish the benefi-cient purposes and objectives implicit in legislation of this type. While our decision in the instant case could rest on that point alone, it is our duty to point out that on a purely legalistic basis we must sustain the order of the deputy commissioner in that his appraisal of the testimony upon which he based the findings of facts is acutely correct. His order was supported *843 by competent substantial evidence which accords with logic and reason. The full commission erred in making its own finding of fact on the two points in question.
The order of the full commission modifying the order of the deputy commissioner must be and hereby is quashed with directions that the order of the deputy commissioner in all respects be reinstated.
THOMAS, C. J., TERRELL, J., and SAULS, Circuit Judge, concur.
ROBERTS, J., dissents.

. The germane portions of the. deputy’s findings are:^
“7. That at the time of his injury, claimant was fifty-one years of age, and received a gunshot wound in the right frontal area of the skull. The gunshot wound caused a large bone defect with indriven bone fragments together with a piece of the bullet to lodge in the skull, penetrating the brain, and lying within the right lateral hamisphere of the skull. The left frontal lobe also sustained contusions from the blast effect of the bullet. Claimant is now hemiplegic and is incontinent of urine and bowel. His lower extremity is completely flaccid. He has no use of his legs or the left side of his body, including the left arm, but is able to use his right arm. He is rational; he is unable to turn himself in bed, and is totally and permanently disabled and has been since the date of his injury.
“8. Dr. Charles W. McGrady, Jr. testified that claimant now and throughout his lifetime, needs constant nursing care consisting of being turned every two hours, twenty-four hours a day, with alcohol rubs on his back two to three times during every eight-hour period to avoid back sores; that he needs a bath every morning and an enema approximately every other day; that his incontinence equipment must be changed regularly; that he needs someone in attendance at all times.
“Dr. David Lane, neurosurgeon, testified that claimant does better and is happier at home; that he needs an attendant during all of his waking hours and someone near at all times.
“Mrs. Beulah Cook, claimant’s wife, testified that claimant is not happy in a nursing home; that she works (luring the day; that she and claimant have two children, a daughter eighteen years of age and a boy nine years of age; that she must work hereafter because her husband cannot; that it would work a hardship on her for claimant to be placed in a nursing home for her to work dur *839 ing the day at the employer’s grocery store, and to visit her husband during the evenings at a nursing home would be exhausting and leave her little time to do her housework and be with her children.
if; $ :J: 4s *
“9. That claimant is now remaining at home and has the services of a practical nurse from 7:00 a.m. to 3:00 p.m. daily, who gives him enemas as needed, together with baths, turns him and rubs his back with alcohol, and changes and cleans the Darol bags (for incontinence of mine and bowels) at $12.00 for an eight hour shift. Thereafter, a colored woman attends claimant from 3:00 p.m. to 11:00 p.m. daily as an attendant and who primarily turns him at regular intervals. This domestic is paid $1.00 per hour, and $1.50 per day transportation costs or approximately $60.00 weekly. Claimant’s wife is presently caring for him from 11:00 p.m. until 7.00 a.m.
“The undersigned does further find that it is in the Claimant’s best interests and it is reasonable and necessary to his good physical and mental health that he remain at home and receive the care and attendance of a licensed practical nurse and the medical attention that he is now being furnished, and that there is no authority requiring that claimant be placed in a nursing home, against the objections of the claimant, simply because to do so would decrease the cost of his care.”

. Hardy v. City of Tarpon Springs, Fla.1955, 81 So.2d 503.

. The new findings of the full commission read in part as follows:
“We have carefully examined the record in this cause and find that the claimant is currently receiving nursing care at his home, and it is costing the carrier a total of $852.17 a month for nursing care and attendance alone. We also find there is competent substantial evidence to the effect that the claimant could be adequately cared for in a nursing home and receive full-time care for a total of $375.00 per month * * * to require the carrier to pay more * * * would be unreasonable. In view of our modification * * * the attorney’s fee is excessive.”

. United States Casualty Co. v. Maryland Casualty Co., Fla.1051, 55 So.2d 741.

. Section 440.25(4) (d), Florida Statutes, F.S.A.

. Andrews v. C.B.S. Division, etc., Fla.1960, 118 So.2d 206.

. Hardy v. City of Tarpon Springs, supra footnote 2, 81 So.2d at page 507:
“It has been suggested that the instant case should he reviewed and affirmed because the evidence shows no material conflict but is susceptible only of an interpretation favorable to the decision. However, it is futile for this Court to examine the record because it is not our duty to, nor should we, sit as a fact finding body to determine from the evidence the facts in the first instance. Nor can we on review ascertain whether the evidence is sufficient to establish facts which have not been found by the Deputy Commissioner. Nor is it our duty nor are we required to inspect the evidence in order to determine opposing contentions about what it may show, or to state such findings of fact as the evidence may permit. *841 The Deputy Commissioner is the only person having authority to make finding's of fact. Our examination of the evidence is not for the purpose * * * of ascertaining whether findings which have 'been made are properly supported by the evidence.”

. United States Casualty Co. v. Maryland Casualty, supra footnote 4; Lindsey v. Willis, Fla.App.1958, 101 So.2d 422.

. Andrews v. C.B.S. Division, etc., supra footnote 6, 118 So.2d at pages 210, 211.

. “Mr. Crowley: (carrier’s attorney) He discharged him from the Holy Cross Hospital, .and it was at my request that he be transferred to the Sun Ridge Nursing Home, and ho was admitted to the Sun Ridge Nursing Home. It is not Doctor' Woolsey’s fault. It is my fault.”
At another point the commissioner asked:
“Why move him?
“Mr. Crowley: Because the hospital bill was high. It was costing much more than we had anticipated * * * ”
“The Commissioner: So, that meant he was at home and it was costing too much money, so you sent him to the first rest home, and that, was costing too much money, and you sent him without authorization from the Claimant, you sent him out to Sun Ridge Manor?” The ambulance driver testified to the question: If Mr. Cook objected to yon taking him away from there, there was nothing he could have done physically, was there?"
“A. Yes, sir; if lie had contested to the point.
“Q. Could he have gotten up and walked ?
“A. No, sir; it was not his physical condition. It was quite evident he could not walk.
“Q. He couldn’t do anything?
“A. No, sir, he couldn’t * *

. Florida Cartage Company v. Tyler, Fla.1956, 90 So.2d 291.