McCORD, Acting Chief Judge.
Florida Junior College at Jacksonville appeals a final ruling of the Unemployment Appeals Commission that appellee Douglas R. Taylor is entitled to unemployment compensation. We affirm.
In August, 1977, Taylor was employed by the appellant college on a contractual basis as a temporary instructor in the federally funded PACE Program. Instructors in the PACE Program are assigned-to teach Navy personnel aboard Navy ships, when they are at sea, or “alongside” (docked). Under the terms of the PACE Program, instructors are paid more for services performed at sea because of the less favorable conditions. They also receive free room and board while at sea. However, PACE instructors who teach “alongside” courses are remunerated at the same hourly rate paid to all part-time and adjunct professors in the Jacksonville *625 area, a rate lower than the at-sea pay scale, and they do not necessarily receive free room and board while “alongside.”
Taylor signed a separate contract for each course he was to teach. Each contract stated a definite contract period and provided that all contracts were subject to minimum enrollment requirement of 10 students per course. Taylor was aware of the minimum enrollment requirement contained in his contract, and, therefore, was on notice that he was not guaranteed a set number of courses for any term. The record, however, is unclear as to whether he was advised at the inception of his employment that he would be subjected to a varying pay scale depending on whether he was at sea or in port. That uncertainty in the record is the basis of our affirmance.
Taylor’s teaching services during the fall of 1977 were performed at sea aboard the USS Saratoga. From August 28 through December 23, 1977, Taylor taught 11 courses, at a rate of $800 per course aboard the ship. In November, 1977, plans were made for the courses to be taught for the period January -16 through March 10, 1978, while the Saratoga would be in port. Taylor was informed that, depending on enrollment, he would probably have four courses to teach “alongside” for the winter term at the lower “alongside’ rate of approximately $400 per course. In December, 1977, the USS Saratoga returned to its home port in Mayport (Jacksonville). Apparently due to a misunderstanding, when Taylor reported in January to Mayport, he determined that he would be teaching only two courses, due to the few signees. The college introduced evidence that Taylor misinterpreted the enrollment sheets and that he would have been offered three, and possible four, courses for that winter term. Taylor further stated that he understood that, while “alongside,” he would have to pay for his own room and board. (The college introduced contrary evidence that Taylor had been informed prior to his return in January that he would receive free lodging, but such evidence did not indicate that he would receive free board.) Taylor refused the job and subsequently filed for unemployment compensation.
The appeals referee, who heard the testimony, found that Taylor refused with good cause the offer of available work because of the lower pay and change in living conditions. Consequently, the appeals referee determined that Taylor was not disqualified from receiving unemployment benefits for having refused an offer of work without good cause. The Unemployment Appeals Commission affirmed that decision. We agree.
In Newkirk v. Florida Industrial Commission, 142 So.2d 750 (Fla. 2 DCA 1962), our sister court of the Second District said:
“ . . . a claimant . . . who refuses employment . . . may remain eligible for benefits only where there is some compelling reason for the refusal of work.”
Taylor understood the enrollment contingency upon which his opportunity to teach courses in the PACE Program was based; therefore, his refusal to accept a job with the college teaching fewer courses than he had contemplated would not have constituted good cause for unemployment compensation purposes. Nor would his refusal to teach at the lower “alongside” rate have constituted good cause had he, from the inception of his employment, been made aware of the difference in the at sea and “alongside” pay scale. However, since the record does not show clearly that Taylor was informed in August, 1977, that he would be subject to a fifty percent salary decrease per course and a decrease in emoluments for “alongside” courses, we find that Taylor had good cause to refuse appellant’s job offer; that there was a compelling reason for his refusal to continue the work.
We have considered appellant’s contention that Taylor was an independent contractor and, therefore, is not entitled to receive unemployment compensation benefits according to Gentile Bros. Co. v. Florida Industrial Commission, 151 Fla. 857, 10 So.2d 568 (1942). The evidence does not support that contention to the exclusion of the lower tribunal’s apparent finding to the contrary.
*626 We have also considered the possibility that the separate and successive contract arrangements which Taylor had with the college would exclude Taylor from unemployment compensation benefits since his fall term contracts had expired, and he had not signed new contracts with the college when he decided in January to refuse further employment. The parties did not raise or brief that question, however, so we will not further consider it here, particularly in view of the testimony of Thomas G. Fowler, PACE Program Coordinator for University of North Florida and appellant Florida Junior College, that the college did not consider Taylor’s employment had been terminated after the fall term and would begin anew in January. Fowler testified:
“Now, he used the term that he was terminated in — in December. He was not terminated. His class just finished at the end of his contract period. And everybody went home for Christmas, even all of the ship’s crew, port and starboard, they went home for Christmas holidays with the idea that he would be back on the 14th of January to start back up again.” (Emphasis supplied.)
AFFIRMED.
ERVIN and LARRY G. SMITH, JJ., concur.