**FLORIDA INDUSTRIAL COMMISSION, et al., v. STATE OF FLORIDA, ex rel. ORANGE STATE OIL COMPANY.**

21 So. (2nd) 599            January Term, 1945

March 27, 1945                     Division B

774

J. *Tom Watson,* Attorney General, *Howard S. Bailey,* Assistant Attorney General, *Burnis T. Coleman, John P. Mack* and *S. Sherman Weiss,* for appellants.

*Hudson & Cosan* and *J. Mark Wilcox,* for appellees.

BROWN, J.:

This is an appeal from a final judgment of the Circuit Court of Leon County awarding a peremptory writ of man-

damus requiring the defendant, Florida Industrial Commission, to pay the relator, Orange State Oil Company, $29.061.20 as a refund of the amounts paid by the Oil Company to the defendant for contributions under the Florida Unemployment Compensation Law upon the commissions earned by the operators of its bulk stations for the period beginning January 1, 1937 and ending June 30, 1943, the court having found that said bulk station operators were not during said period employees of the Orange State Oil Company as defined by the Florida Unemployment Compensation Law.

We might at the outset call attention to the fact that it was not necessary for this action to have been brought in the name of the State on the relation of the Orange State Oil Company. It is true that such actions are frequently brought in that manner, but some years ago this Court called attention to the fact that where mandamus is invoked for the enforcement of a private right, the State is not a necessary party, and all proceedings should be conducted in the name of the actual parties in interest. State, ex rel. v. Atlantic Coast Line R. Co., 95 Fla. 14, 116 So. 48. We also said in that case that where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, it being sufficient that he is interested as a citizen in having the law executed and the duty in question enforced. In such cases, where a public right is primarily involved, the petition for the alternative writ should be brought in the name of the State upon the relation of the person or persons instituting the proceedings as relators, it being usual in such cases, but not essential, that the suit be instituted by the Attorney General or with his consent, or that the refusal of that officer to act be shown. In some jurisdictions, however, the employment of the writ of mandamus as if it were a sovereign prorogative writ in all cases is found in the practice of always bringing the action in the name of the sovereign state on the relation of the real party interested, but even in those jurisdictions it is recognized that in most instances the proceeding is purely one to enforce a civil remedy in which the real party in interest is

the relator, the state being merely a formal party. See also State ex rel. Chilton County v. Butler, 225 Ala. 191, 142 So. 531; 35 Am. Jur. 72 et seq., 18 R.C.L. 323.

In its petition for mandamus the relator alleged that it was a wholesale dealer in petroleum products and owned numerous bulk stations in various parts of Florida which stations were operated by persons under contracts with relator, and that under this contract the operators of these bulk stations were independent contractors and not employees of the relator. A copy of the contract was attached to and made a part of the petition for the alternative writ. The relator also alleged that it had been required to pay to the collector of internal revenue of the United States "social security taxes" and "unemployment taxes" on the commissions paid to its bulk station operators, and that suit had been filed in the United States District Court for refund of such taxes which resulted in a judgment in favor of the relator. The opinion in that case was written by District Judge John W. Holland and contains a statement of the facts and the nature and effect of the contract under which the bulk station operators sold and delivered the products consigned to them by the relator. After making a full statement of the facts, the federal district judge reached the following conclusion:

"1. The plaintiff neither had nor exercised any control over the means and methods used by the operators in the sale and distribution of plaintiff's products. The requirement of plaintiff as to the signing of receipts, the filing of reports and the keeping of records does not constitute control over the means and methods of accomplishing the results sought by the contracts. The business contemplated by the relationship between the plaintiff and the operators in this case was the sale and distribution of petroleum products. Requirements by plaintiff that records of the quantity of the product received, the name thereof, the quantity on hand, and other similar requirements as to the form of accounting does not constitute control by the plaintiff of the means and methods employed by the operator in accomplishing the result sought, which was the sale and distribution of the product. Under the terms of the written contract and in actual practice the

respective operators were free to adopt their own means and methods of accomplishing this result.

"2.   Said operators are independent contractors and are not employees of the plaintiff.   See Texas Co. v. Higgins, D. C., 32 F. Supp. 428, affirmed 2 Cir., 118 F. 2nd 636; also Indian Refining Co. v. Dallman, D. C., 31 F. Supp. 455, affirmed 7 Cir., 119 F. (2nd) 417.

"3.   Said operators being independent contractors and not employees of the plaintiff are not included within the provisions of either Title 8 or Title 9 of the Social Security Act, 42 U.S.C.A. 1001 et seq., 1101 et seq., and plaintiff was not legally required to pay taxes upon the commissions earned by the said operators.

"4.   The taxes so assessed and collected by defendant of and from the plaintiff were illegally assessed and collected. Plaintiff is entitled to judgment for the amount of said taxes so illegally assessed and collected, together with the interest paid by the plaintiff thereon."

The collector of internal revenue appealed this judgment of the district court to the Circuit Court of appeals for the 5th Circuit, which court affirmed the judgment of the District Court.   See Fahs v. Orange State Oil Company, 138 Fed. (2nd) 743.

Before Judge Holland's decision was affirmed, the Circuit Court of Appeals, 5th Circuit, had handed down another decision of similar import, American Oil Company v. Fly, 135 Fed. (2nd) 491, in which it was held that the bulk plant distributors of the oil company, which had discretionary control over the operation of such bulk plants and distribution therefrom, and bearing their own business expenses, were independent contractors, and that the oil company was not obligated to pay social security taxes based on commissions of so much per gallon on sales and deliveries, which compensation was lawful and paid to them by the oil company.

Respondents in the court below, Florida Industrial Commision and the members of its governing board, filed a motion to quash the alternative writ which the circuit judge denied. Then the respondents filed a return to such alternative writ in which it denied that the bulk plant operators were inde-

pendent contractors and that any sums had been illegally assessed and collected from relator. A stipulation of facts was entered into between the relator and respondents and upon these pleadings and the stipulated facts the judgment in this case was rendered.

In their brief, respondents admit that for contributions paid through June 30, 1941, the issue *may* be precluded by two cases with reference to the liability to pay contributions based on remuneration of bulk operators, said two cases being Gentile Bros. Co. v. Florida Industrial Commission, 151 Fla. 857, 10 So. (2nd) 568, and Florida Industrial Commission v. Peninsula Life Insurance Co., 152 Fla. 55, 10 So. 793. The contributions paid under protest by the relator to the respondents were claimed to be due under the Florida unemployment compensation law, based upon the theory that the commissions paid to the bulk operators should be considered as wages of employees, and cover a period from and including the year 1937 up to July 30, 1943. We think the two cases cited, the Gentile Bros. case and the Peninsula Life Insurance Company case, based on the then existing statutory set-up, are clearly conclusive of the question that all amounts so paid up to and through June 30, 1941, should be refunded.

However the respondents vigorously contend that subsequent to July 1, 1941, the law was amended in such respect that these two decisions of this Court became no longer applicable and that for the period subsequent to July 1941 a different construction of the law should apply.

Undoubtedly the distinctions between employees and independent contractors as understood at common law had long been recognized by our decisions in the sense referred to in the above cited cases. And as far back as Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503, we had held that a contract similar to one here involved, between the appellant in that case and a merchant who sold and distributed its oil on a commission basis, and who under the contract furnished his own trucks and drivers for making deliveries of oil, resulted in making the commission merchant an independent contractor, and that he, the merchant, and not the oil company, was responsible for any damage done by the negligent

operation by the driver of one of his trucks. It might also be observed that when statutes are claimed to be in derogation of the common law, they must be strictly construed.

The original Unemployment Compensation Law, Chapter 18,402, was adopted in 1937. It broadly defined *wages* as "all remunerations payable for personal services," and *employment* as "services—performed for wages or under contract of hire, written or oral, express or implied," except "where the context shows otherwise."

Paragraph V of Section 3 of said 1937 Act reads as follows:

"V. Services performed by an individual for wages shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Commission that—

"(a)   Such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and

"(b) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(c)   Such individual is customarily engaged in an independently established trade, occupation, profession, or business."

Paragraph VI of the same Section made certain exceptions from the term employment which are not pertinent here, but we might call attention to the last sub-section of said paragraph VI, designated (i), which reads:

"(i) Provided, that in the event any employer, or employment is excluded from the operation of Title IX of the Federal Social Security Act, or amendment thereto, or any Federal Statute, or any ruling of Federal Social Security Board, then such employer or employment shall be, by virtue of such fact, excluded from the operation of this Act."

This last Section 3 E VI (i) was amended by Chapter 19637 Acts of 1939 so as to read:

"(i) Any employer, employment or service which is not included within the operation of Title IX of the Federal Social Security Act, or amendments thereto."

As to this last quoted amendment we might observe that it is within the province of the Legislature to approve and adopt the provisions of federal statutes, and all of the administrative rules by a federal administrative body, that are in existence and in effect at the time the Legislature acts, but it would be an unconstitutional delegation of legislative power for the Legislature to adopt in advance any federal act or the ruling of any federal administrative body that Congress or such administrative body might see fit to adopt in the future. See Hutchins v. Mayo, 143 Fla. 707, 197 So. 495, 133 A.L.R. 394; 27 Va. Law Review 1941 700 So. this last quoted amendment to the Act must be confined to Title IX of the Federal Social Security Act as it existed when Chapter 19637 was adopted by our Legislature.

The first sentence of said Section V shows that "services performed by an individual for wages shall be deemed to be employment subject to this Act unless and until" certain enumerated things are shown to the satisfaction of the commission, as prescribed by the above quotation; but here we are not dealing with services performed by an individual for "wages." We are dealing with commissions earned by an independent contractor engaged in the operation of a bulk plant and the sale and delivery by him with his own equipment of petroleum products for a commission of a specified amount per gallon. This makes it unnecessary for us to decide whether the word "and" at the end of subparagraphs (a) and (b) of the above quoted paragraph V should be construed to mean "or," as in our opinion, the paragraph as a whole is not applicable in this case under the pleadings and the stipulated facts.

The Legislature of 1941, by Chapter 20,685, amended the Act of 1937 as amended by the Act of 1939 in several respects. The Acts as thus amended in 1941 are incorporated in Florida Statutes 1941 as Chapter 443. The Act as amended in 1941 eliminated the language of Section 3 E VI (i). So the provision of the 1939 Act that the term "employment" should not include any employer, employment or services which are not included within the operation of Title IX of the Federal Social Security Act is apparently intended to be repealed, but the

(a), (b), (c) provisions of Paragraphs V of Section 3 of the 1937 Act are retained. See subparagraph (f) of Section 443.03, Florida Statutes of 1941.

This much amended Florida Unemployment Compensation Law was again amended in 1943, Chapter 21,982, approved June 10, 1943, but none of these amendatory provisions appear to affect the provisions just above discussed, as such latter amendments were adopted just about the close of the period during which the contributions made by appellee and here in question had been paid over to the appellant. It is made quite plain, by the Federal decisions hereinabove cited, Orange State Oil Co. v. Fahs and Fahs v. Orange State Oil Company, that the bulk plant operators of the Orange State Oil Company were not subject to the Federal Social Security Law, and hence not subject to the Florida Unemployment Compensation Law, prior to July 1, 1941, and that therefore all contributions paid by the Oil Company upon their compensation prior to July 1, 1941, must be refunded. See also Texas Company v. Higgins, 32 Fed. Supp. 428, which was affirmed by the Circuit Court of Appeals for the 2nd Circuit in an able opinion by Judge Learned Hand, 118 Fed. (2nd) 636. The contract in the instant case is on all fours with the contract involved in the case of Texas Company v. Higgins.

The only difference between the law relative to the term "employment" after July 1, 1941, and the law prior to that date is that persons might now be regarded as employees under the state law although they are not employees as defined by the Federal Social Security statute. It is true that the Section of the 1941 statute, embracing what is known as the ABC provisions, adds to the words, "for wages" the words "or any contract of hire." With this exception the law now reads just as it did when the Gentile case arose. In our opinion the addition of these words, "under any contract of hire" does not really result in any substantial change in the meaning of the law, the general purpose of which is set forth in Section 1 of the Act, now Section 443.02 F.S. 1941. Every person who performs services for wages does so under some sort of contract of hire, express or implied. Our conclusion is that if a person was an independent contractor prior to the

amendment, he is still an independent contractor. In the Gentile case this Court speaking through Mr. Justice TERRELL, said:

"When the Legislature enacted the Unemployment Compensation Act, it was fully conscious of the master servant relation as it existed at the common law; that the distinction between principal contractor, independent contractor, and servant were well recognized by our law and the courts of this State. It was also conscious of the fact that the relation of master and independent contractor is a very common one, that hundreds of thousands of dollars are paid out annually on such contracts and that when they attain the status of an employment unit, they are required to register with and be recognized by the Industrial Commission.

"An independent contractor has been defined as one who pursues an individual employment or occupation and represents his employer as to the results of his work but not as to the means by which the results are accomplished."

Undoubtedly under the Gentile case the bulk station operators here involved were and are independent contractors under the Florida Unemployment Compensation Law prior to the 1941 amendment, and, in our opinion, such amendment did not enlarge the definition in so far as the same is applicable to them, and they are still independent contractors. In other words, the Gentile case is still applicable and controlling here. And in that case this Court did not overlook the ABC provisions.

But appellants earnestly contend that these bulk station operators are employees because their service is not performed "outside the usual course of business for which such service is performed." Since the war began, and due to conditions brought on by the war, the oil company lost some of its bulk station operators and had to take over the operation of a few of these stations, so that as to some bulk stations it became engaged in the same kind of business as that performed by the operators here involved, and the contention is that therefore the remaining bulk station operators are not independent contractors. In other words, an independent contractor cannot be an independent contractor because the com-

pany with whom he has the contract happens to be engaged in some places in the same kind of business. We are not impressed by that argument.

It is also contended that the services performed by the bulk station operators is not "outside of all the places of business of the enterprise for which such service is performed," because the oil company owns all the bulk stations. We think the Gentile case and the federal cases above cited specifically dispose of that argument. As is well stated in appellant's brief, the word "ownership" is not synonymous with the term "place of business." A man's "place of business" is the place where he transacts his business. He may or may not own it. It is none the less his place of business. The oil company may own the bulk stations, but under the contract here involved each bulk station is the place of business of the operator, not of the company. Furthermore, the business of the operator is the sale and distribution of petroleum products to retail dealers. This distribution is not entirely accomplished at the bulk station, but by means of trucks which belong to the operator. His "service" is the sale and delivery of these products to the retail dealer, and most of the acts entering into this service are performed, not only outside of all places of business of the oil company but also outside the operator's place of business. But, under these contracts, the operator is in possession of the bulk station and it is his place of business and not the place of business of the company that owns it.

And so it is that even if we should depart from the holding in the Gentile case and now say that the common law has no application in determining the status of the operators, we could still hold that these bulk station operators are not employees, but independent contractors in so far as any of the provisions of the Florida Unemployment Compensation Act, as amended in 1941, are concerned, because they are free of control in the performance of their contracts, their duties are performed outside of all places of business of the oil company, and they are engaged in an independently operated business. Indeed it appears from the stipulation of facts in this case that the operator bears all the expense and cost of selling and

distributing said products, furnishes and maintains at his own expense his own trucks and automotive equipment and furnishes and pays his own help and employees as he may see fit and can discharge them without the company's consent. None of said operators is required to devote his entire time to the distribution of the oil company's products, and the company does not prescribe all rules or regulations for the operator's business, and each operator is free to engage in any other business or line of business except as limited in the contract, and most of the operators, if not all, are actively engaged in other lines of business. This court could almost take judicial notice of that last stated fact if it had not been admitted in the agreed stipulation.

Counsel for appellants in their able and exhaustive brief have cited numerous decisions from other states. Undoubtedly there is some conflict in the decisions, but most of the apparent conflict arises from the differences in the language employed in the various state employment statutes. And some of the states do not place as much emphasis upon the common law principles governing master and servant and distinguishing between servants and independent contractors as this Court has always done. Probably no other state in the union has followed established common law principles as consistently as has Florida. Even back in territorial days, the Legislature adopted the common law except where it came in conflict with our own statutes and this legislative provision has been retained in our statutes to this good day. This Court is still convinced of the wisdom of this legislative and judicial policy which has obtained in Florida well over a hundred years.

Some other questions are discussed in the brief which we think are unnecessary to consider here. However, we agree with appellants that the circuit court was correct in holding that the appellee here, the relator in the court below, was not entitled to interest on the contributions paid by it and which were ordered to be refunded. Section 443.15 F.S. 1941 provides that contributions unpaid on the date of which they are due and payable shall bear interest at the rate of one half per cent per month from and after such date, until payment,

plus accrued interest, is made, in addition to other penalties. But the last paragraph of that Section provides that where refunds are made by the commission the commission shall make such refunds without interest. While this does not seem exactly consistent, we think this provision is controlling. The allowance or disallowance of interest is in the main a statutory matter. Appellee argues that the statute contemplates that where the facts are brought to the attention of the commission and claim of refund is made, the commission shall immediately refund the amount illegally collected, and where, as here, the commission declines to make the refund and requires the relator to resort to legal action for the recovery of money which is rightfully his, surely the statute did not intend that no interest should be allowed. But the fact remains that the statute says that when refund is made it shall be made without interest, and if this be unfair, resort must be had to the Legislature and not to the courts.

Having reached the conclusion that the bulk station operators of the Orange State Oil Company are independent contractors and not employees, the judgment of the circuit court, which reached the same conclusion, must be and is hereby affirmed.

Affirmed.

CHAPMAN, C. J., THOMAS and SEBRING, JJ., concur.