124 So.2d 48 (1960)
STATE of Florida ex rel. FLORIDA INDUSTRIAL COMMISSION and James T. Vocelle, Walter L. Lightsey and Stuart L. Moore, as and constituting the Florida Industrial Commission, Relators,
v.
Ben C. WILLIS, as Judge of the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, Respondent.
No. C-13.
District Court of Appeal of Florida. First District.
November 4, 1960.
Rehearing Denied November 28, 1960.
*49 Burnis T. Coleman and Lawrence Kanzer, Tallahassee, for relators.
Pallot, Marks, Lundeen, Poppell & Horwich, Miami, for respondent.
WIGGINTON, Chief Judge.
Relators have filed in this court a suggestion for writ of prohibition to restrain the Honorable Ben C. Willis, as Judge of the Circuit Court of Leon County, Florida, from exercising further jurisdiction in a mandamus proceeding pending in that court wherein Air Control Products, Inc., is petitioner and the Florida Industrial Commission is the respondent. We are not called upon to adjudicate in this proceeding the merits of the controversy which has arisen between Air Control Products, Inc., and the Unemployment Compensation Tax Division of the Florida Industrial Commission which forms the subject matter of the mandamus proceeding sought to be prohibited. The sole question presented for our determination is whether the Circuit Court of Leon County is proceeding without jurisdiction, or in excess of the jurisdiction conferred upon it by law.[1]
The mandamus action in question was instituted by Air Control against the Florida *50 Industrial Commission by petition which alleges that the Commission notified Air Control of its determination that an employer-employee relationship existed between Air Control and certain named independent contractors, and demanding employment compensation contributions on the money paid to such independent contractors. The petition further alleges that Air Control paid under protest the contribution assessment levied against it by the Commission, the protest being predicated upon the assertion that the independent contractors named by the Commission in its status determination were not employees, and for that reason no unemployment contributions on the amounts of compensation paid to them were assessable. Air Control thereafter made a written demand upon the Commission that it be granted an adjustment or refund of the amount of contributions so paid, which demand was made pursuant to the provisions of F.S. § 443.15 (6), F.S.A.
The petition alleges in paragraph 6:
"On or about August 6, 1959, the Respondents, by and through their official representative, advised the Relator that the request of July 15, 1959, was recognized as a request for refund and the Respondents, by and through their official representative, further advised the Relator that, upon the advice of the Legal Department of Respondents
"`* * * it would appear to be necessary to file a petition for Writ of Mandamus to require us to refund the money and if a Court of final jurisdiction so orders, we will do so but not otherwise.'"
The Commission admitted the truth of this allegation in its return to the alternative Writ of Mandamus. Air Control in its petition prays for the issuance of an alternative writ commanding the Commission to make the refund or grant an adjustment to Air Control in the amount paid by it.
Both Air Control in its petition and the Commission in its return alleged that the written demand by Air Control upon the Commission was made pursuant to the provisions of subsection (6) of Section 443.15, Florida Statutes, F.S.A., which subsection provides in full as follows:
"Refunds.  If not later than four years after the date of payment of any amount as contributions, interest or penalties, an employing unit who has paid such contributions, interest or penalties shall make application for an adjustment thereof in connection with subsequent contribution payments, or for a refund thereof because such adjustment cannot be made, and the commission shall allow such employer to make an adjustment thereof without interest in connection with subsequent contribution payment by him, or if such adjustment cannot be made, the commission shall refund said amount, without interest, from the fund. For like cause, and within the same period, adjustment or refund may be made on the commission's own initiative. Provided, however, that nothing in this chapter shall be construed to authorize a refund of contributions which were properly paid in accordance with the provisions of this chapter at the time of such payment; provided further that refunds under this subsection and under § 443.03(5) (g) 7. may be paid from either the clearing account or the benefit account of the unemployment compensation fund and from the special employment security administration fund with respect to interest or penalties which have been previously paid into such fund, provisions of § 443.10 (2) to the contrary notwithstanding."
A literal and uncritical reading of the first sentence of this quoted subsection might lead a reader to conclude that the Commission would be always required to allow an adjustment or refund upon a timely application therefor, in view of the *51 language "the Commission shall allow such employer to make an adjustment thereof * * * or * * * the Commission shall refund said amount * * *." Such a construction, of course, would be absurd and would permit employers to destroy the unemployment compensation program of Florida by the simple device of applying for an adjustment or refund within the time prescribed. We, instead, apply the basic rules of statutory construction (that a statute should not be construed to bring about an unreasonable or absurd result and that a statutory provision should be construed to effectuate the intention of the legislature in enacting the statute) and hold that in the quoted subsection the legislature intended that upon a timely application by an employing unit for an adjustment or refund, the Commission must then make a new determination as to whether such unit is entitled to an adjustment or refund; that, if the Commission then determines that the applying unit is so entitled, the Commission then shall allow the adjustment or make the refund. We cannot, however, find in the subsection a legislative intent to provide for a hearing on the application by the applying unit at which hearing evidence would be taken and a record made up which could be examined by an appellate court in certiorari proceedings.
Examining the actions of the Commission in the light of the quoted subsection as we construe it, the conclusion appears inevitable from the allegations of both the petition for writ of mandamus and the return to the alternative writ that the Commission arbitrarily denied the application of Air Control for an adjustment or refund without even making a redetermination, merely adhering to any determination it may have made originally to the effect that Air Control was liable for payment. That communication from the "official representative" of the Commission made this clear by declaring that the Commission would make a refund only if a court of final jurisdiction so ordered "but not otherwise." The statement in that communication that "it would appear to be necessary to file a Petition for a Writ of Mandamus to require us to refund the money * * *" cannot have the effect of conferring jurisdiction upon any court but does have the effect of supporting the conclusion that the Commission would take no further step on the application except if ordered to do so by a court of competent jurisdiction.
A profound fundamental principle is involved in this situation  whether the citizens of this State shall have recourse to the courts when an administrative agency of the state has with seeming arbitrariness refused to give consideration to an application for adjustment or refund made pursuant to a provision of law. The citizen in a case like this has no right of appeal or certiorari to obtain a review by the court, for no hearing has been provided by the legislature which would permit the making of a record that would allow an appellate court judicially to review the agency's order. Without such a record the only court proceeding which would seem to be available is the Writ of Mandamus, in which proceeding the court would have an opportunity to make the determination as to whether an applicant for an adjustment or refund was entitled to one or the other under the law and the facts. This is exactly what the Respondent in these prohibition proceedings has assumed jurisdiction to do in the instant case.
We cannot say that upon the record before us the Respondent is without jurisdiction or has exceeded his jurisdiction, and the burden is upon the Commission, which has filed the suggestion in prohibition before us, to allege sufficiently and to show in the record filed before us that the Respondent lacks jurisdiction or has exceeded it. Under such circumstances a Suggestion in prohibition must be denied. The suggestion should also be denied for the additional reason that it attempts to *52 make these prohibition proceedings a substitute for an appeal and has failed to show that the questions raised in its suggestion cannot adequately be settled on an appeal.
It was a situation somewhat like this that the people of Florida had in mind in 1885 when they adopted Section 4 of the Declaration of Rights of the Florida Constitution, F.S.A., which section reads as follows:
"Courts open to everyone; remedy for wrongs.  All courts in this state shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."
An exact factual situation as presented here was present in the Orange State Oil Company case.[2] The allegations of the petition for writ of mandamus filed in that case are almost identical with those contained in the petition filed by Air Control in this case. In Orange State Oil the Commission had assessed unemployment compensation contributions against the oil company on the erroneous theory that the company's independent contractors were in fact employees, and all compensation paid them was taxable under the unemployment compensation law. The assessment in that case, as here, was paid under protest and a demand for adjustment or refund was subsequently made by the oil company. Upon the Commission's refusal to grant the refund, the proceeding in mandamus was instituted in the Circuit Court. The court proceeded to dispose of the case by determining the status of the so-called employees, and holding that they were in fact independent contractors and no unemployment contributions were payable on the compensation paid to them by the oil company. Having arrived at that conclusion the peremptory writ of mandamus issued and required that an adjustment or refund be made as demanded by the petitioner oil company. On appeal to the Supreme Court the Circuit Court's decision was affirmed. The cited decision is clear authority for the jurisdiction of the Circuit Court of Leon County to entertain and carry to a conclusion the mandamus proceeding which the Commission now seeks to have prohibited by a writ of this court.
The Commission seeks to brush aside the effect of the decision rendered by the Supreme Court in the Orange State Oil Company case by contending first, that the Circuit Court's jurisdiction was not raised in that proceeding, and secondly, the decision was rendered under the unemployment compensation statute as it then existed and prior to its subsequent amendment. A careful comparison of the present statute under which Air Control seeks a writ of mandamus,[3] with the statute which was in effect at the time Orange State Oil Company procured its alternative and peremptory writs of mandamus based upon substantially identical facts, will reveal that the subsequent amendments to the statute are minor in nature and have no effect upon the controlling principles of law on which our decision in this case must rest.
Before instituting this action in prohibition the Commission filed its answer to the alternative writ alleging among other things that through error or inadvertence it had failed to give Air Control written notice of the contribution assessment levied against it by registered or certified mail as required by the statute. The Commission seizes upon its own erroneous failure to comply with the requirements of the statute which it now seeks to invoke against Air Control's right to maintain this action by urging that such error on its part precluded Air Control from requesting the administrative hearing afforded it by F.S. § 443.15(2) (a), F.S.A. The Commission reasons *53 that since the administrative remedy available to Air Control was not accorded it, the Commission's notification that it had considered and rejected Air Control's demands for a refund was premature. The answer seems to contend that because of both the erroneous and premature acts of the Commission, the entire slate should now be wiped clean, and Air Control should be required to commence new proceedings through which an administrative hearing on its application for adjustment or refund of the protested assessment may be held by the Commission, and the matter disposed of administratively in regular course as outlined in the statute. It is the position of the Commission that it has the exclusive authority through quasi-judicial proceedings, to determine employer-employee relationships of persons falling within the purview of the Unemployment Compensation Act, and jurisdiction to make such determination is not vested in the circuit courts of this state.
The petition for alternative writ affirmatively alleges that Air Control's demands for a refund or adjustment of the contributions paid under protest had been denied by the Commission which advised that Air Control's only avenue for relief lay in a mandamus action to be instituted in the Circuit Court of Leon County. To have then demanded an administrative hearing for the purpose of adjudicating this issue would have been a futile and fruitless gesture in view of the fact, according to the allegations of the petition, that this issue had already been resolved by the Commission in a manner adverse to Air Control. If, as alleged in the petition, the Commission had officially determined Air Control's right to an adjustment or refund without affording Air Control an administrative hearing on the matter, the Commission would be estopped to now insist that such administrative remedies to secure the refund must necessarily be exhausted before judicial review of the Commission's action can be obtained.
The suggestion for writ of prohibition is denied and the cause dismissed.
CARROLL, DONALD, J., concurs.
STURGIS, J., dissents.
STURGIS, Judge (dissenting).
I am of the opinion that the suggestion for writ of prohibition is well founded and that a rule absolute should issue in the premises.
On the relation of Air Control Products, Inc., an employer, the Circuit Court of Leon County issued an alternative writ of mandamus under the hand of the respondent judge, Honorable Ben C. Willis, requiring the Florida Industrial Commission to refund to the employer $889.96, or show cause for failure so to do. The sum in dispute is an unemployment compensation contribution assessed by the Status Section of the Florida Industrial Commission against the employer under the provisions of Chapter 443, Florida Statutes, F.S.A. Important to my views is the salient fact that the assessment was initially paid under protest, thus requiring consideration of the procedural requirements and powers governing administrative review under such circumstances, as well as the power of the Circuit Court to act in the manner indicated by the order triggering this proceeding in prohibition.
The writ of mandamus herein recites that it is based on the following averments of the petition therefor:
"1. On or about December 11, 1958, the Respondents [Florida Industrial Commission] by and through their official representative, advised the Relator [Air Control Products, Inc.] that Respondents had determined that an employee-employer relationship exists between the Relator and the independent contractors who install windows for the Relator so that unemployment *54 compensation law contributions would be payable to Respondents by the Relator in regard to payments made by the Relator to the independent contractors who install windows for it.
"2. On or about March 5, 1959, the Relator paid the Respondents $889.96, under protest, as unemployment compensation law contributions in regard to payments made by the Relator to independent contractors who installed windows for it. (Emphasis supplied.)
"3. On or about July 15, 1959, the Relator requested of the Respondents an adjustment or refund in the said amount of $889.96 on the grounds that the independent contractors who installed windows were not employees of the Relator, said request being made pursuant to Section 443.15(6) of the Florida Statutes [F.S.A.]
"4. The said sum of $889.96 consisted of unemployment compensation law contributions, together with interest, assessed by Respondents for the years 1956, 1957 and 1958 in regards to payments made by the Relator to the following independent contractors who installed windows for it: [Names follow]
"5. The persons listed in the preceding paragraph were not employees of the Relator during the years in question but were independent contractors; the contributions, together with interest, in the total amount of $889.96 assessed and collected by the Respondents were erroneous; and it is the duty of the Respondents under Section 443.15(6) of the Florida Statutes [F.S.A.] to grant the Relator a refund of the said amount or an adjustment in that amount against future contributions.
"6. On or about August 6, 1959, the Respondents, by and through their official representative, advised the Relator that the request of July 15, 1959, was recognized as a request for refund and the Respondents, by and through their official representative, further advised the Relator that, upon the advice of the Legal Department of Respondents.
"`* * * it would appear to be necessary to file a Petition for a Writ of Mandamus to require us to refund the money and if a Court of final jurisdiction so orders, we will do so but not otherwise.'"
In respect to an employer's delinquency in making the reports and paying the unemployment compensation assessments fixed by law, Section 443.15(2) (a), Florida Statutes, F.S.A., vests the Florida Industrial Commission with power to
"1. determine the amount of contributions due from such employer on the basis of such information as may be readily available to it, which said determination shall be deemed to be prima facie correct; 2. assess such employer with the amount of contributions so determined; and 3. immediately give written notice by registered or certified mail to such employer of such determination and assessment including penalities as provided in this chapter, if any, added and assessed, demanding payment of same together with interest as herein provided on the amount of contributions from the date when same were due and payable."
The statute limits the time for and provides for review of the assessment as follows:
"Such determination and assessment shall be final at the expiration of fifteen days from the date of the mailing of such written notice thereof demanding payment unless such employer shall have filed with the commission a written protest and petition for hearing specifying the objections thereto. Upon receipt of such petition within the fifteen days allowed the commission *55 shall fix the time and place for a hearing and shall notify the petitioner thereof. The commission by regulation may appoint special deputies with full power to hold hearings hereunder, and to submit their findings together with a transcript of the proceedings before them and their recommendations to the commission for its final decision and determination. At any hearing held before the commission or its special deputy, as herein provided, evidence may be offered to support such determination and assessment or to prove that it is incorrect. Provided, however, that at such hearing the petitioner shall be required to show wherein that it is incorrect or else file full and complete corrected reports. Evidence may also be submitted at such hearing to rebut the determination by the commission that the petitioner is an employer under the provisions of this chapter, and upon evidence taken before it or upon the transcript submitted to it with the findings and recommendation of its special deputy the commission may set aside its determination that the petitioner is an employer under the provisions of this chapter or may reaffirm such determination. Any determination made by the commission with reference to the status of an employer under the provisions of this subsection shall become final upon the mailing of notice of such determination by registered or certified mail to the last known address of such employer unless within fifteen days thereof the employer shall have filed in the district court of appeal in the district in which the petitioner resides or in the district court of appeal for the first district of Florida a petition for writ of certiorari. Such review shall proceed in the same manner as provided for a review of decisions of the board of review under § 443.07(4) (e)."
The Industrial Commission first moved the circuit court to quash the alternative writ of mandamus on the substantial ground that it failed to show that the employer had exhausted its adequate administrative remedy under the quoted statute, which motion was denied. Unquestionably, that action of the trial court might, in due season and in the absence of this proceeding in prohibition, have formed the basis of an appropriate assignment of error on an appeal from such final order as the court in regular order might ultimately enter in the proceeding in mandamus; however, such an eventuality is totally beside the point on this review. To hold otherwise would render innocuous, inefficient and unproductive the traditional, highly respected and important purpose served by writs of prohibition in the body of the law and, indeed, would be tantamount to their abolishment.
It is seen that there is nothing in the alternative writ of mandamus or petition therefor remotely suggesting that the employer, following its protest of the assessment, made any effort to have the Florida Industrial Commission review the question of the legality of the assessment as provided by the last quoted provisions of Section 443.15(2) (a). Moreover, there is nothing therein to indicate that the Florida Industrial Commission, sitting as a board of review, has in fact entered any official order, as distinguished from the hereinafter discussed "advice" disposing of the employer's later request, under a different subsection of the statute, for a refund of the assessment.
The petition for and writ of mandamus recite that the employer was "advised" by an undisclosed "official representative" of the Commission that employer's letter of July 15, 1959, which date is subsequent to the expiration of the time fixed by the statute for review of the assessment paid under protest, "was recognized as a request for refund" and further, that "upon the advice of the Legal Department" of the Industrial Commission
"it would appear to be necessary to file a Petition for a Writ of Mandamus *56 to require us to refund the money and if a Court of final jurisdiction so orders, we will do so but not otherwise."
Such allegations fall fatally short of being averments to the effect that the Commission, in exercising the quasi-judicial authority conferred on it by the statute, ever officially disposed of the employer's request for refund. At most, the allegations indicate the Commission only mumbled around on the subject. I wish to make it clear at this point that under the facts alleged I would have taken no exception to a writ of mandamus requiring the Commission to take official action in the premises, but not invading its discretionary power.
An administrative body vested by law with quasi-judicial powers, as is the Florida Industrial Commission when acting as a board of review, can speak its official conclusion only by the vehicle of a formal order in the premises, and is utterly without authority to delegate that power in any particular. Obviously, therefore, words of "advice" given by an employee, agent, or self-styled "official representative" of such body, or by one to whom such body has undertaken to delegate the power vested in it, have no meaning, force or effect, and cannot, on the theory of estoppel or otherwise, bind or create any right or benefit in favor of the party to whom the advice is given; nor does such attempted but unlawful delegation of power bind the body in any particular with respect to the subsequent exercise of its judicial power. Any other result would lead inevitably to utter confusion. The controlling point in this case is that the "advice" given to the employer by some alleged "official representative" of the Commission as to the legal procedure that should be followed by the employer in order to further prosecute its request under F.S. § 443.15(6), F.S.A., for a refund of the assessment paid was in fact advice and nothing more. Neither the employer nor the Commission could be bound by it.
Assuming, however, that the allegations of the petition for and writ of mandamus are construable as adequate to reflect the issuance by the Commission, sitting as a board of review, of a formal order to the effect stated, it is my conviction that under F.S. Chapter 443, F.S.A., such order would be reviewable only by certiorari to the district court of appeal, and not by mandamus in the circuit court.
It seems apparent from the facts stated in the alternative writ of mandamus that employer's right to that type of relief is based entirely on subsection (6) of F.S. § 443.15, F.S.A., which, as I interpret it, is designed to relieve a situation where the employer has erroneously paid an assessment in the belief that it was proper and, therefore, made no protest, and who, after the time for protest and appeal has expired, discovers the error. It provides:
"(6) Refunds.  If not later than four years after the date of payment of any amount as contributions, interest or penalties, an employing unit who has paid such contributions, interest or penalties shall make application for an adjustment thereof in connection with subsequent contribution payments, or for a refund thereof because such adjustment cannot be made, and the commission shall allow such employer to make an adjustment thereof without interest in connection with subsequent contribution payment by him, or if such adjustment cannot be made, the commission shall refund said amount, without interest, from the fund. For like cause, and within the same period, adjustment or refund may be made on the commission's own initiative. Provided, however, that nothing in this chapter shall be construed to authorize a refund of contributions which were properly paid in accordance with the provisions of this chapter at the time of such payment; provided further that refunds under this subsection and under § 443.03(5) (g) 7. may be paid from either the clearing account or the benefit account of the unemployment compensation fund and from the special *57 employment security administration fund with respect to interest or penalties which have been previously paid into such fund, provisions of § 443.10(2) to the contrary notwithstanding."
Thus the primary characteristic distinguishing subsection (2) (a) of F.S. § 443.15, F.S.A., from subsection (6) thereof is this: Subsection (2) (a) relates to a situation where the employer considers, at the time he pays the assessment, that it is unlawfully imposed upon him, protests accordingly, and within 15 days requests a quasi-judicial review by the Commission to have his rights adjudicated. As to subsection (6), however, the refund or adjustment contemplated thereby arises by virtue of circumstances incident to an allegedly erroneous payment, not known to be such at the time of payment and for that reason not made under protest. Except for subsection (6) such erroneous payment could not be refunded or credited to the employer. These distinctions must be constantly borne in mind; and it must also be recognized that subsection (6) operates to the benefit of all employers, whether or not initially delinquent in paying an assessment.
Upon denial of the motion to quash the alternative writ of mandamus, the Commission filed its return, admitting all allegations except those contained in paragraph (5) and the allegation of paragraph (4) to the effect that the persons named therein were independent contractors; and it separately and affirmatively alleged, in substance: That on December 11, 1958, the Commission notified the employer of the Commission's initial determination that an employer-employee relationship existed between the employer and the several persons designated in paragraph (4) of the writ as independent contractors; that it furnished the employer with supplemental unemployment compensation contribution reports to cover said persons and requested that same be completed and returned; that the reports were returned uncompleted and without any remittance of unemployment compensation contributions covering the wages paid such persons; that on January 23, 1959, the Commission assessed the employer with unemployment compensation contributions in respect to said persons and requested remittance; that on March 3, 1959, the Commission, not having received payment, issued a notice of tax lien against the employer for the amount thereof; that on March 5, 1959, the employer paid the assessment under protest. This phase of the return then recites that through "error or inadvertence" of the respondent Commission's Contribution Department the notice of the tax assessment was delivered directly to the employer by a field deputy of the Commission, rather than by registered or certified mail as provided by F.S. § 443.15(2) (a), F.S.A.; that failure to strictly follow the statute in that regard was not discovered until after the employer filed its petition in mandamus; and that the Commission was not aware thereof at the time it gave the employer the advice as set forth in the above-quoted paragraph 6 of the writ of mandamus. The Commission's return thereupon asserts that by reason of its failure to give the notice by registered or certified mail the employer "was unable to make and file any timely request for an administrative hearing pursuant to said applicable section of the law," and that this "had prevented the Relator [employer] from exhausting its plain, adequate, complete and exclusive statutory remedy of an administrative hearing to which it is justly entitled under the provisions of Section 443.15(2) (a)." On that predicate the return then tendered to the employer a full refund of the assessment so paid under protest, and on the basis of the affirmative allegations of the return moved to vacate the alternative writ of mandamus.
The purpose of the Commission's tender of the refund is not clear, but it was apparently intended to afford the Commission an opportunity to recast its procedure by giving written notice of the tax lien by registered or certified mail, as specified by the statute, and, according to this notion, thus place *58 itself in unquestionable position to enforce payment. The question of whether, under the facts and circumstances shown by the writ, as implemented by the affirmative allegations of the return, the employer had notice in accordance with law of the tax lien imposed by the Commission in the performance of its administrative duties, is strictly one of law and cannot be affected by admissions of the pleader. It will be noted that the petition for the writ of mandamus did not in any manner question the sufficiency of the notice of assessment or of the tax lien that issued pursuant thereto. On the contrary, the employer recognized the imposition of the lien, paid it under protest, and long afterwards brought the proceeding in mandamus. These acts of the employer impliedly admits actual notice of the assessment; and that, of course, is the essential object of the statutory provision regarding notice by registered or certified mail. Under such circumstances the employee should not be heard to complain of failure to receive due notice in the premises.
In response to the return the employer filed a somewhat anomalous pleading which the respondent judge treated (a) as a rejection of the Commission's tender of the refund and (b) as an application for an order denying the Commission's motion to vacate the alternative writ; and thereupon entered an order denying the motion to vacate and providing for a pre-trial conference to consider and determine:
"(a) The necessity or desirability of amendment of the writ and return thereto with regard to setting forth the facts relied upon by petitioner to have created the relationship of independent contractor between petitioner and the persons named in paragraph 4 of the writ and the facts relied upon by respondents to have created the relationship of employer-employee;
"(b) The possibility of obtaining admissions of fact and/or of documents which will avoid unnecessary proof; and
"(c) Such other matters as may aid in the disposition of the action."
This order evinces a clear intention of the respondent judge to try the facts and on the basis thereof to judicially determine, as an incident to the proceeding in mandamus, whether the persons designated in paragraph 4 of the writ were in fact employees within the purview of the Unemployment Compensation Law, as initially determined administratively by the respondent Commission through its Contribution Department, or whether, on the contrary, they were independent contractors, as contended by the employer. It is clearly the trial court's intention to rest the issuance or denial of a peremptory writ of mandamus in the premises upon its findings of fact as to the status of the parties named as contractors or employees, as the case may be. Such action, if within the jurisdiction of the circuit court, would necessarily preclude the Commission, sitting as a board of review and as such exercising quasi-judicial powers, from reviewing its allegedly irregular administrative action initially denying the refund. Or, if the acts recited by the alternative writ do constitute official action of the Commission on the application for refund, then it is quite evident that the circuit court is permitting a proceeding in mandamus to be employed as a vehicle for appellate review of the Commission's act. I respectfully suggest that the circuit court lacks jurisdiction in both of those fields.
It was upon the entry of the last mentioned order that the Commission filed in this court its suggestion for a writ of prohibition to prevent the respondent judge from proceeding in mandamus.
Where the writ of mandamus is employed to coerce an inferior tribunal, it must clearly appear by the petition that no other adequate legal remedy is available, in the sense that there is no motion or other step available in the action or proceeding to which the relief sought by mandamus pertains. It must also appear that relief is not available by way of appeal, error, certiorari, *59 or some other method of review of the judgment rendered by the inferior tribunal and, further, that there exists a clear legal right to have the particular act performed, as well as the legal duty of the respondent to perform it. Ketchum Coal Co. v. District Court, 48 Utah 342, 159 P. 737, 4 A.L.R. 619. And while mandamus will lie in a proper case to compel a judicial tribunal to exercise an existing jurisdiction, it is not available to supplant or control the discretion and judgment of such tribunal when acting within the scope of its judicial power. Mandamus will not issue to direct in what particular way the court shall proceed or how it shall decide a particular matter, or to compel it to correct or reverse a decision already reached, either interlocutory or final, especially where, in the regular course, the decision may be reviewed upon a writ of error, certiorari, or an appeal. Nor will mandamus be substituted as a means of reviewing judicial action in lieu of the express remedial processes created by statute for such purpose.
With respect to courts and judicial offices, involving matters of judgment and discretion, the remedy by mandamus has a very limited application. It may be invoked to compel the tribunal to entertain jurisdiction and proceed with the exercise of the powers vested in it, but in the absence of an abuse of discretion it cannot control or review the tribunal's decision. Ex parte Harris, 52 Ala. 87, 23 Am.Rep. 559. This rule is also applicable to governmental agencies having jurisdiction, within the scope of the legislative intent, to act in a quasi-judicial capacity upon matters involving judgment and discretion. The power of initial review conferred on the Florida Industrial Commission under the within discussed subsections of F.S. § 443.15, F.S.A., is quasi-judicial and exclusive, subject only to such further review as is specified in the act or otherwise available under the law.
The question of whether the relator in mandamus was entitled to a refund or credit to the extent of the alleged unlawful assessment is strictly a question of fact. The question of whether the Florida Industrial Commission, sitting as a board of review, is vested with exclusive authority initially to resolve that question of fact is strictly a question of law. In the aspect these mixed questions of law and fact were raised, as indicated by the petition for the writ of mandamus, I am persuaded that under the statute it was the duty of the Florida Industrial Commission alone to pass judicially on these questions, and that any alleged erroneous exercise of its judicial discretion in the premises can be tested only by certiorari to the District Court of Appeal as provided by the statute, or by common-law certiorari, rather than by mandamus in the Circuit Court. See Ex parte State of Nebraska, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876; Re Pollitz, 206 U.S. 323, 27 S.Ct. 729, 51 L.Ed. 1081. It is only when the duty of the inferior tribunal is so plain in point of law and so clear in point of fact that no element of discretion is left as to the precise mode of its performance and only one course is open to it, that its duty becomes ministerial and is enforceable by mandamus. The principles which govern the right to invoke the remedy by mandamus to correct an unlawful assumption of jurisdiction are the same as those which control the issuance of the writ of prohibition for the same purpose. Ex parte State of Oklahoma, 220 U.S. 191, 31 S.Ct. 426, 55 L.Ed. 431.
I suggest that the decision of the majority is in direct conflict with the landmark case of De Groot v. Sheffield, Fla. 1957, 95 So.2d 912, 914, in which our Supreme Court, speaking through Mr. Justice Thornal, assumed the task of reconciling its former "divergent opinions" so as to "establish for the future some orderly procedure" for obtaining review of an order of an administrative agency vested with authority to make orders or determinations which directly affect both public and private rights within the area of so-called administrative law. While it is a case in which mandamus was held to be a proper *60 remedy, because it was there employed to compel the performance of a purely administrative act prescribed by law, the rules there established are highly pertinent to a proper determination of the problem with which we are faced on this proceeding in prohibition; so much so that the interested reader should thoroughly review it.
The cited case effectively sets at rest the rule that mandamus is the proper remedy by which to require an administrative board, though vested with quasi-judicial functions, to perform its purely administrative functions in accordance with the law. With equal vigor it holds that the quasi-judicial determinations of such administrative boards (orders upon such matters as it is said the Florida Industrial Commission was concerned with in the proceedings now under consideration) are not subject to review by the use of mandamus:
"As contrasted to certiorari, mandamus is an original proceeding to enforce a clear legal right to the performance of a clear legal duty. It is not an appellate writ. As in any original proceeding the record and evidence are made and offered in that proceeding. While it is by nature discretionary it is not an appropriate process to obtain a review of an order entered by a judicial or quasi-judicial agency acting within its jurisdiction. When thus analyzed it is obvious that certiorari and mandamus serve two entirely different functions.
"In delineating the distinctions between certiorari and mandamus we disclaim any allegiance to the formalities and technicalities of the past. Procedural formalities are not necessarily sacrosanct merely because they are time-honored. Nonetheless, in situations such as the one before us, the distinctions have a present and vital importance in determining the issues presented by the litigants and considered by the trial court. We think the lines of demarcation are justifiable in a field such as administrative law which is still in its formative stages of development." (Emphasis supplied.)
In that case the Supreme Court conceded that "over the years orders of administrative agencies have been placed under scrutiny in Florida in both mandamus and certiorari cases" and that "little attention has been given to the propriety of the procedure in particular cases. Hence the resultant confusion." The court pretermitted any discussion in that case of the proper use of equity injunction and the writ of prohibition, pointing out, however:
"Injunction has been many times employed to assault legislative action at the state and local level where such action allegedly impinged on some constitutional right. Attacks on municipal zoning ordinances are typical. Prohibition has at times been employed as against quasi-judicial action of administrative agencies where the agency proposed to exceed its jurisdiction or exercise jurisdiction which it did not have."
It then pinpointed the fact that its discussion was limited to the question of appellate review in situations where applicable statutes fail to provide specific methods of review as was the case here, observing that "when the statute provides the appellate procedure, that course should be followed." Curry v. Shields, Fla. 1952, 61 So.2d 326, 327; State ex rel. Coleman v. Simmons, Fla. 1957, 92 So.2d 257. On that limited question the Supreme Court held that common-law certiorari is always available to obtain review in situations where no other method of appeal is provided for. Lorenzo v. Murphy, 159 Fla. 639, 32 So.2d 421. And this, I think, provides a complete answer to the implication of the decision of the majority in this proceeding in prohibition, to the effect that unless review of the action of the Florida Industrial Commission is available by mandamus, including as an incident thereto a factual determination upon the result of which the right to the peremptory *61 writ is destined to turn, as sought to be employed in the circuit court, the employer will be deprived of his constitutional right of review.
De Groot v. Sheffield, supra, also delineated, and I think quite clearly, the field of review of administrative orders, saying:
"The reviewability of an administrative order depends on whether the function of the agency involved is judicial or quasi-judicial in which event its orders are reviewable or on the contrary whether the function of the agency is executive in which event its decisions are not reviewable by the courts except on the sole ground of lack of jurisdiction."
Applying the established principles reiterated and redefined in De Groot v. Sheffield to the situation presented by the instant petition for writ of prohibition, it is my opinion that certiorari is the only remedy by which to obtain review of the official action, if any, taken by the Florida Industrial Commission on the application of the employer for the refund, and that the circuit court was and is without jurisdiction to entertain mandamus as a substitute for that method of review.
With apologies for the length of the foregoing dissertation concerning the function of mandamus, much of which I recognize to be elemental, I come now to a discussion of my views upon the sole question before this court which, as the majority concedes, is whether the circuit court, by the provisions of its last-mentioned order, is proceeding in excess of its jurisdiction.
I fully recognize that the writ of prohibition is not available to restrain a legislative or quasi-legislative or a purely administrative or ministerial act not in its nature judicial or quasi-judicial. Its pristine purpose is to control the action of tribunals or persons exercising judicial power who attempt to usurp a jurisdiction belonging to some other forum. Whether the writ is appropriate is determined by the nature of the act sought to be restrained and not by the character or name of the office or position held by the person or persons sought to be restrained by the writ. State ex rel. Swearingen v. Railroad Comm., 79 Fla. 526, 84 So. 444.
In State ex rel. Coleman v. Simmons, Fla. 1957, 92 So.2d 257, 259, the relator in prohibition sought a rule absolute to prevent the respondent Florida Board of Pharmacy from revoking a license to practice pharmacy granted to him by a prior board. It was made to appear that the relator was granted a license to practice under Section 465.02, Florida Statutes 1949, F.S.A., then in force, which required the applicant to be "a graduate of an accredited school or college of pharmacy." Simmons did not meet that requirement, but the board as then constituted granted the license on its interpretation that the quoted provision of the statute was not mandatory. The respondent successor board, acting under subsequently enacted Section 465.101, Florida Statutes 1955, F.S.A., which authorized the board to revoke or suspend a license obtained "through a mistake of the board of pharmacy," initiated proceedings to revoke the license on the ground that it was granted by mistake. In seeking a rule absolute in prohibition, the relator (Simmons) contended that the alleged "mistake" was not such as to justify the revocation of his license, while the respondent Board of Pharmacy contended that it acted within the scope of the authority conferred upon it by F.S. § 465.101, F.S.A. and that its action was not subject to control or review by prohibition. In denying the rule absolute the Florida Supreme Court said:
"We hold that under the situation reflected by this record prohibition is not the appropriate remedy to accomplish a review. In proceeding under the statute, the respondent Board acted within the orbit of the authority granted to it by the Legislature. Whether the Board exercised its power properly or correctly or whether there were *62 meritorious defenses available to the relator against the exercise of the power are not questions to be determined in this proceeding. They are matters which may be the subject of judicial review by appeal in accordance with Section 465.20, Florida Statutes 1955, F.S.A.
* * * * * *
"The decision here is grounded entirely on the proposition of procedure.
* * * * * *
"Regardless of the correctness of the ruling of the respondent Board in revoking the license of the relator, a matter upon which we do not now pass, it nevertheless had the basic power to act. This court should not interfere with the orderly processes for review by way of appeal by the issuance of the rule absolute under the circumstances reflected by this record. For analogy see State ex rel. Swearingen v. Railroad Commissioners of Florida, 79 Fla. 526, 84 So. 444.
"The cause should be permitted to take its orderly course through the appellate processes provided by statute."
Applying the rule there announced to the problem with which this court is confronted, it is apparent that if the employer in the cause under consideration had activated the Florida Industrial Commission to a review of his protest in accordance with the statutory procedures and processes stated in Section 443.15(2) (a), the Commission would have had basic jurisdiction and duty to act on the question of the propriety of the assessment.
Under subsection (6) of the statute, supra, the Commission is vested with power of its own motion or upon request of the employer, initiated within the four-year period limited, to make an adjustment or refund of an unemployment contribution that is erroneously paid. Inherent in that power is the implication that the employer's request must be predicated on a prima facie showing of entitlement to the refund or adjustment. The very nature of the relief afforded by that subsection further contemplates that the Commission must take direct official action upon the request and express that action by a formal order granting or denying it. I recognize that subsection (6) does not in itself spell out a method for review of the Commission's action thereunder, as does subsection (2) (a), but that lapse does not preclude the right of review. Lorenzo v. Murphy, supra. And while it does not affect my view, it is observed that the petition for the writ of mandamus does not clearly reflect that the Commission entered any official or formal order whatever upon the employer's request for an adjustment or refund. The inescapable implication is that some employee of the Commission wrote a letter to the employer in which he made observations in excess of his lawful authority and for which the Commission is not bound.
The respondent in prohibition relies on the case of Florida Industrial Commission v. State ex rel. Orange State Oil Company, 1945, 155 Fla. 772, 21 So.2d 599, in which the action of mandamus was successfully employed in the Circuit Court of Leon County to compel the respondent Commission to refund an assessment against Orange State Oil Company for unemployment contributions. That case was decided prior to an amendment of Section 443.15 whereby the right of review of an order of the Commission, entered within the purview of subsection (2) (a) of that section, is vested in the district courts of appeal. This court is not called on in this proceeding to decide the question. However, by analogy to subsection (2) (a) it would seem that an appeal from action taken under subsection (6) of Section 443.15 would also lie to the district court of appeal.
The Orange State Oil Company case, however, is primarily distinguishable from the instant case in that mandamus was employed there under the then existing statutory set-up and the decisions of the *63 Supreme Court in Gentile Bros. Co. v. Florida Industrial Commission, 151 Fla. 857, 10 So.2d 568, and Florida Industrial Commission v. Peninsular Life Insurance Co., 152 Fla. 55, 10 So.2d 793, and the writ issued in that case to require the performance of a purely administrative act, the court saying [21 So.2d 602]:
"We think the two cases cited * *, based on the then existing statutory set-up, are clearly conclusive of the question that all amounts so paid up to and through June 30, 1941, should be refunded."
The amendments to Chapter 443 subsequent to the decision in Orange State Oil Company are highly significant in these particulars:
1. The laws in force at that time did not provide for administrative review. By later amendment  see Section 443.15(2) (a)  administrative review is specifically provided for in those instances where, as in this case, the assessment was paid under protest. When the cited case was decided the circuit court was the only tribunal providing a forum to which the citizen might apply for redress for a wrong such as was there involved. But I hasten to add, this is not to say that mandamus, the type of action there employed, would have been approved by the Florida Supreme Court as the proper form of remedy had the question been presented on that appeal. The overriding consideration is that this proceeding in prohibition, as well as the mandamus jurisdiction under attack, involves facts arising after adoption of the amendment providing administrative review. The unequivocal allegations of the subject alternative writ of mandamus reflect (a) that every condition precedent to the right of administrative review of the assessment in question was present, (b) no attempt to seek the review thus provided, (c) an inescapable inference that the request for refund  made under a separate provision of the statute (subsection (6)) long after the time allowed in which to take action for the purpose of obtaining administrative review of the assessment paid under protest  involved the same considerations that brought about the employer's protest against the assessment in the first instance.
2. Another important amendment that followed the decision in the Orange State Oil Company case provided for appellate review of the Commission's quasi-judicial determinations and is found in Section 443.15(2) (a):
"Any determination made by the commission with reference to the status of an employer under the provisions of this subsection shall become final upon the mailing of notice of such determination by registered or certified mail to the last known address of such employer unless within fifteen days thereof the employer shall have filed in the district court of appeal in the district in which the petitioner resides or in the district court of appeal for the first district of Florida a petition for writ of certiorari. Such review shall proceed in the same manner as provided for a review of decisions of the board of review under § 443.07(4) (e)."
Subsection (6), supra, of F.S. § 443.15, F.S.A., is clearly construable in pari materia with subsection (2). It follows, as an inescapable conclusion, that the legislature did not intend to exclude from the district courts of appeal the power to review administrative determinations under subsection (6), that such power is implicit therein, and that, a fortiori, no such power under any guise exists in the circuit courts.
It is no answer to the jurisdictional question presented by the petition for writ of prohibition to dwell on academic propositions concerning the right of the citizen to his day in court for the redress of wrongs. The problem is extremely more far reaching: Along the shore, the question is whether the circuit courts of this state have the power, as the holding of the majority *64 implies, on a proceeding in mandamus against an administrative body vested by law with quasi-judicial powers, including the power to determine facts upon which the judicial powers will be exercised, to take over the burden imposed by positive statutory law upon such bodies. Further out, in the deeper water, the question is whether the tribunal for review as designated by the statute is to be by-passed. The effect upon our judicial system of the rule laid down by the majority is so violent as to be indescribable. The writ of mandamus has never before been permitted to embrace the novel scope and depth afforded by the orbit into which it is now launched.
In conclusion, I am persuaded, first, that the petition for writ of prohibition herein and return thereto clearly reflect that the circuit court is exceeding its jurisdiction by undertaking in an action of mandamus to determine the factual question of the status of the persons on whose account the unemployment contribution assessments were made, that is, whether they are employees or independent contractors, and that such is exclusively within the province of the Florida Industrial Commission; second, that review of the Commission's quasi-judicial acts is by law vested exclusively in the district courts of appeal.
I therefore dissent.
NOTES
[1] State ex rel. Carmichael v. Rowe, Fla.App. 1958, 104 So.2d 134.
[2] Florida Industrial Commission v. State ex rel. Orange State Oil Company, 1945, 155 Fla. 772, 21 So.2d 599.
[3] F.S. § 443.15(2), F.S.A.