293 So.2d 95 (1974)
Jean W. GENTRY, Petitioner,
v.
The DEPARTMENT OF PROFESSIONAL AND OCCUPATIONAL REGULATIONS, STATE BOARD OF MEDICAL EXAMINERS of Florida, Respondent.
No. S-494.
District Court of Appeal of Florida, First District.
March 26, 1974.
Rehearing Denied May 7, 1974.
*96 Joseph D. Farish, Jr., Farish & Farish, West Palm Beach, for petitioner.
Michael I. Schwartz, Miami, for respondent.
McCORD, Judge.
This is a petition for writ of certiorari to review an order of the Department of Professional and Occupational Regulations, State Board of Medical Examiners of Florida.
Petitioner is a licensed physician practicing medicine in Tallahassee Florida. Respondent's complaint charged that petitioner had diagnosed seven patients as suffering from gonorrhea and had treated them for that condition; that subsequent diagnosis by others revealed that these patients did not have the disease. Petitioner was charged as to these patients with making misleading, deceptive, untrue, or fraudulent representations in her practice and with engaging in unethical, deceptive or deleterious conduct or practice harmful to the public and with unprofessional conduct under the provisions of the Medical Practices Act, Sections 458.1201(1)(b), 458.1201(1) (h), 458.1201(1)(m), and 458.1201(1)(n), Florida Statutes, F.S.A.
By its final order, respondent adopted the findings of fact and conclusions of law as recommended by respondent's hearing officer (a medical doctor) and, in addition, adopted the hearing officer's recommended orders set forth in his paragraphs 1, 2 and 4 but modified his recommended paragraph 3 as follows:
"1. That the license to practice medicine and surgery in this state of JEAN W. GENTRY, M.D., is hereby suspended for a period of two years, which Order of Suspension is herein stayed and withheld.
2. The license to practice medicine and surgery in this state of the licensee is placed in a probationary status for a period of two years from the date of the Final Order in this matter. During this probationary period the licensee shall personally report to the State Board of Medical Examiners at each semi-annual meeting to give a progress report concerning her probation. The licensee shall be notified prior to each of these semi-annual meetings of the exact time and place of her appearance.
3. As part of the terms and conditions of the licensee's probation, said licensee, when embarking upon the diagnosis of the disease of gonorrhea, shall use all of the currently accepted precedures of testing, which includes the culture method. Testing by direct smear or gram stain may be used as an adjunct procedure. Further, when any diagnostic method is utilized and found positive for the diagnosis of gonorrhea such method shall be confirmed by an independent clinical laboratory or by a laboratory of the State Board of Health.
4. A violation by the licensee of the terms and conditions of her probation, as aforesaid, shall result in the suspension of her medical license, as provided in paragraph 1. above."
*97 We have examined the findings of fact of the hearing officer together with his conclusions of law (all of which were adopted by the Final Order of respondent as aforesaid) and are of the opinion that the conclusions of law are not supported by the findings of fact. From the findings of fact, it appears that petitioner is guilty of no more than a series of erroneous diagnoses of gonorrhea which resulted from the use of a direct smear or gram stain test rather than a culture test; that the culture procedure is the most accurate and currently acceptable method of testing for the presence of gonorrhea in the female patient. Simply stated, petitioner did not use the test which in the opinion of the experts (though the evidence shows some difference of opinion) is the most accurate and currently acceptable method of testing for the presence of gonorrhea in the female patient. Does this failure justify the conclusions of law reached by the hearing officer and adopted by respondent? We are of the opinion that it does not.
It is a fundamental principal of law that a physician is not the insurer of the correctness of his diagnosis. See Hill v. Boughton, 146 Fla. 505, 512, 1 So.2d 610, 134 A.L.R. 678. An erroneous diagnosis which is arrived at through negligence can subject a physician to civil liability, but the findings here made by respondent are insufficient to invoke disciplinary procedures against petitioner under the Medical Practices Act.
On the basis of the factual findings of the hearing officer, petitioner was found guilty of the following violations of Section 458.1201(1), Florida Statutes F.S.A.:
1. Making misleading, deceptive and untrue representations in the practice of medicine [violation of paragraph (b)].
2. Engaging in unethical, deceptive and deleterious conduct harmful to the public [violation of paragraph (h)].
3. Unprofessional conduct [violation of paragraph (m)].
Unprofessional conduct (insofar as is pertinent here) is defined by paragraph (m) of the statute as follows:
"Unprofessional conduct shall include any departure from, or the failure to conform to, the minimal standards of acceptable and prevailing medical practice... ."
There is no finding that petitioner in using the direct smear or gram stain test rather than the culture test failed to conform to the minimum standards of acceptable and prevailing medical practice.
As to the violations set forth in 1 above, we do not believe the legislature intended that the terms used  misleading, deceptive and untrue representations  should apply to representations which are honestly made but happen to be untrue because of an incorrect diagnosis. If every physician who makes an honest but incorrect diagnosis were held to be guilty of violating the Medical Practices Act, there would probably be few who would not be subject to disciplinary procedures. As stated by the Supreme Court in City of Miami v. Romfh, 66 Fla. 280, 63 So. 440:
"An interpretation of the language of a statute that leads to absurd consequences should not be adopted when, considered as a whole, the statute is fairly subject to another construction that will aid in accomplishing the manifest intent and the purposes designed. See Curry v. Lehman, 55 Fla. 847, 47 South. 18." See also State v. Willis, Fla., 124 So.2d 48.
To constitute a violation, we believe the legislature intended that the misleading, deceptive and untrue representations must be made willfully (intentionally).
The findings do not support the conclusion that petitioner willfully violated the proscriptions of paragraph (b). Likewise, the findings do not support the conclusion of 2 above that petitioner was engaged in unethical, deceptive and deleterious conduct, there being no showing of a willful violation.
*98 Writ of certiorari is granted and the Order of October 18, 1973, of the State Board of Medical Examiners of Florida is quashed.
SPECTOR, Acting C.J., and BOYER, J., concur.